CUNNINGHAM v CITIZENS INSURANCE COMPANY OF
AMERICA

CUNNINGHAM v AUTO-OWNERS INSURANCE COMPANY

Docket Nos. 70392, 70573. Submitted January 4, 1984, at Grand
Rapids.—Decided April 2, 1984. Leave to appeal applied for.

Plaintiff, Gary L. Cunningham, brought actions in the Kalamazoo
Circuit Court after he received an injury in an automobile
accident. In one action, Court of Appeals Docket No. 70392,
plaintiff sought no-fault insurance benefits from defendant
Citizens Insurance Company of America, the insurer of his
vehicle, and also certain other benefits from defendant Aetna
Life Insurance Company pursuant to a group health insurance
plan fully self-funded by plaintiff's employer and administered
by Aetna pursuant to an administrative service contract. Citi-
zens resisted the claim contending that plaintiff's policy was
void *ab initio* and that the plaintiff was not insured due to his
intentional falsification of information in his application for
insurance. Citizens discovered such falsification one day after
the plaintiff's accident. Plaintiff's insurance binder was effective
24 days before the accident. In another action, Court of Appeals
Docket No. 70573, plaintiff alleged that if rescission *ab initio* on
his policy with Citizens is allowed then he is entitled to benefits
from defendant Auto-Owners Insurance Company, as the servic-
ing carrier for the assigned claims facility. The circuit court,
C. H. Mullen, J., consolidated the actions brought by the plain-
tiff. In Docket No. 70392 the plaintiff moved for summary
judgment against Citizens. The trial court granted plaintiff's
motion. Citizens appeals from the judgment and order to that
effect. In Docket No. 70573 Auto-Owners moved for a summary

REFERENCES FOR POINTS IN HEADNOTES

[1, 2, 4, 9-12] 7 Am Jur 2d, Automobile Insurance §§ 36-38, 45 *et seq.*
Validity and construction of "no-fault" automobile insurance plans.
42 ALR3d 229.
Compulsory, financial responsibility, or assigned risk automobile
insurance. 83 ALR2d 1104.

[3, 7, 8] 7 Am Jur 2d, Automobile Insurance §§ 35, 356.

[5] 73 Am Jur 2d, Summary Judgment §§ 26, 27.

[6] 7 Am Jur 2d, Automobile Insurance §§ 340, 341.

judgment. The trial court granted Auto-Owners' motion. Plaintiff appeals from the final judgment entered for Auto-Owners. The Court of Appeals consolidated the appeals for its consideration. *Held:*

1. The no-fault insurance act does not preclude Citizens from rescinding plaintiff's policy so that it is void *ab initio* as a result of plaintiff's perjury in the procurement of the policy.

2. Sections 3220 and 3224 of the no-fault insurance act address only the cancellation of automobile liability insurance, not its rescission. Those sections serve only as a limitation on the cancellation of policies issued to honest applicants. Section 3224 impliedly recognizes the continuing vitality of common-law rescission.

3. Under the circumstances, the wrongdoer, plaintiff, must suffer the consequences of his actions. Plaintiff's fraud was discovered in a reasonably timely fashion. Citizens did not unjustifiably delay notifying plaintiff of its decision to rescind the policy.

4. Citizens permissibly rescinded plaintiff's insurance policy *ab initio.*

5. Since plaintiff's deception permitted Citizens to rescind the policy *ab initio* as to his personal right to collect no-fault benefits, plaintiff's claim against the assigned claims facility (Auto-Owners) must fail under § 3113(b) of the no-fault insurance act.

The judgment in Docket No. 70392 is reversed and the judgment in Docket No. 70573 is affirmed.

V. J. BRENNAN, J., dissented from the reversal in Docket No. 70392. It is his belief that to allow an insurer to rescind a policy of automobile liability insurance *ab initio* would run contrary to the stated policy of the no-fault insurance act and would be incompatible with the compulsory nature of the act. He noted that another panel of the Court of Appeals has rejected the argument that §§ 3220 and 3224 of the act are inapplicable since they relate to cancellations and not rescission *ab initio.* He would conclude that the facts indicate that Citizens had an opportunity to discover plaintiff's driving record but neglected to do so promptly. He noted the policy implications of not granting to the plaintiff the relief requested and that it is very conceivable that in many cases a person would make an innocent misrepresentation on an insurance application which could be used to deny him coverage. On the basis of the policy behind our compulsory insurance scheme that "persons who suffer loss due to the tragedy of automobile

accidents in this state shall have a source and a means of recovery", along with the other considerations, he would affirm the summary judgment in Docket No. 70392.

Opinion of the Court

1. Insurance — Automobiles — No-Fault Insurance — Rescission — Perjury.

The no-fault insurance act does not preclude an insurer from rescinding an insurance policy so that it is void *ab initio* where the policy was procured as a result of the insured's deliberate and intentional falsification of information in his application for insurance and such fraud was discovered in a reasonably timely manner and the insurer did not unjustifiably delay in notifying the insured of its decision to rescind (MCL 500.3101 *et seq.;* MSA 24.13101 *et seq.).*

2. Insurance — Automobiles — No-Fault Insurance — Cancellation — Rescission — Common Law.

The no-fault insurance provisions regarding cancellation of a policy of insurance do not address the rescission of a policy and serve only as a limitation on the cancellation of insurance policies issued to honest applicants; section 3224 of the act impliedly recognizes the continuing validity of common-law rescission (MCL 500.3220, 500.3224; MSA 24.13220, 24.13224).

3. Insurance — Automobiles — No-Fault Insurance.

The no-fault insurance act provides that a person is not entitled to collect personal protection insurance benefits through the assigned claims facility if he is the owner or registrant of a motor vehicle which is involved in the accident resulting in the claim for benefits if he does not possess the required no-fault automobile insurance coverage (MCL 500.3113[b]; MSA 24.13113[b]).

4. Insurance — Automobiles — No-Fault Insurance — Rescission.

A claimant for personal protection insurance benefits pursuant to the no-fault act is not entitled to receive benefits from an insurance company as the servicing carrier for the assigned claims facility where it is determined that the claimant's policy of no-fault automobile insurance on his vehicle was properly rescinded *ab initio* as to his personal right to collect no-fault benefits and therefore he did not possess the required no-fault automobile insurance coverage on his vehicle at the time the accident which resulted in his claim occurred (MCL 500.3113[b]; MSA 24.13113[b]).

DISSENT BY V. J. BRENNAN, J.

5. JUDGMENTS — SUMMARY JUDGMENT — ISSUES OF MATERIAL FACT — COURT RULES.

*Summary judgment should only be granted on the ground that there is no genuine issue as to any material fact where there is no such genuine issue; the court must be satisfied that it is impossible for the claim or defense to be supported at trial because of some deficiency which cannot be overcome (GCR 1963, 117.2[3]).*

6. INSURANCE — AUTOMOBILES — NO-FAULT INSURANCE — COMPULSORY INSURANCE.

*Michigan's no-fault automobile insurance act is a compulsory insurance statute, the purpose of which is to ensure compensation to persons injured in automobile accidents (MCL 500.3101 et seq.; MSA 24.13101 et seq.).*

7. INSURANCE — AUTOMOBILES — NO-FAULT INSURANCE.

*The no-fault automobile insurance act requires that the owner or registrant of a motor vehicle maintain security, usually in the form of insurance, for payment of benefits of personal protection insurance; the owner of a vehicle which is not insured pursuant to the act is not entitled to recover personal protection insurance benefits under the act (MCL 500.3101[1], 500.3113[b]; MSA 24.13101[1], 24.13113[b]).*

8. INSURANCE — AUTOMOBILES — NO-FAULT INSURANCE — FAILURE TO INSURE.

*The operation of a motor vehicle upon a public highway for which vehicle there is not maintained security for the payment of benefits of personal protection insurance pursuant to the no-fault automobile insurance act constitutes a misdemeanor, punishable by fine and/or imprisonment (MCL 500.3102[2]; MSA 24.13102[2]).*

9. INSURANCE — AUTOMOBILES — NO-FAULT INSURANCE — TERMINATION — NOTICE.

*The Insurance Code provisions dealing with the termination of insurance coverage under the no-fault automobile insurance act prohibit an insurer from terminating personal injury protection prior to giving prospective notice to its insured (MCL 500.3220, 500.3224; MSA 24.132220, 24.13224).*

10. INSURANCE — AUTOMOBILES — NO-FAULT INSURANCE — TERMINATION AB INITIO.

*Termination ab initio of a no-fault automobile insurance policy*

*runs contrary to the statutory purpose of requiring that notice be given before a policy could be terminated in order to allow an insured an opportunity to obtain other insurance; termination* ab initio *runs contrary to such statutory purpose as it leaves the insured without insurance from the time he obtained his initial policy and doesn't allow that person a reasonable period to obtain other insurance; rescission* ab initio *is not a remedy available to insurers under Michigan's compulsory insurance scheme (MCL 500.3224[3]; MSA 24.13224[3]).*

11. INSURANCE — AUTOMOBILES — NO-FAULT INSURANCE — CANCELLATION — RESCISSION *AB INITIO*.

*The no-fault insurance provisions regarding cancellation of a policy of insurance apply to an insurer's assertion that a policy may be rescinded* ab initio *(MCL 500.3220, 500.3224; MSA 24.13220, 24.13224).*

12. INSURANCE — AUTOMOBILES — NO-FAULT INSURANCE — MISREPRESENTATIONS BY INSURED — PUBLIC POLICY.

*A person who makes misrepresentations on an application for no-fault automobile insurance may be allowed to recover benefits under the policy which he has obtained through those misrepresentations in the furtherance of the policy behind the compulsory insurance scheme that "persons who suffer loss due to the tragedy of automobile accidents in this state shall have a source and means of recovery".*

*William R. Oudsema,* for plaintiff.

*Lilly, Domeny & Durant, P.C.* (by *Jeffrey E. Gwillim* and *Terrence J. Lilly),* and *Dykema, Gossett, Spencer, Goodnow & Trigg* (by *Robert H. Gorlin* and *Richard A. Barr),* for Citizens Insurance Company of America.

*Howard & Howard, P.C.* (by *James H. Geary),* for Auto-Owners Insurance Company.

*Early, Lennon, Peters & Crocker* (by *John T. Peters, Jr.),* for Aetna Life Insurance Company.

Before: R. B. BURNS, P.J., and V. J. BRENNAN and J. T. KALLMAN,* JJ.

J. T. KALLMAN, J. Plaintiff filed his action in Docket No. 70392 in the Kalamazoo County Circuit Court, seeking no-fault insurance benefits. Citizens Insurance Company of America resisted the claim, contending that plaintiff was not covered by a policy of no-fault insurance. Plaintiff moved for summary judgment pursuant to GCR 1963, 117.2, subds (1), (2), and (3). After a hearing, the trial court granted plaintiff's motion under GCR 1963, 117.2(3). Citizens now appeals as of right.

The plaintiff in this case, in September of 1981, deliberately and intentionally falsified his application for insurance through Jim Madden Associates, Inc., with Citizens.[1] When asked whether he had been convicted of drunk driving within the last five years, plaintiff answered "no", although he had, in fact, been so convicted in March, 1980. The independent insurance agent issued a binder based on this fraudulent application. The insurance company began its routine investigation into plaintiff's driving record. On October 5, 1981, Citizens discovered plaintiff had lied and had falsely sworn to the truth of his driving record in the application.

Plaintiff was injured in an accident which occurred on October 4, 1981, one day before Citizens had knowledge of plaintiff's wrongdoing. It was too late to undo the accident. The binder was effective

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] The dissent claims it is very conceivable that in many cases a person might make an innocent misrepresentation on an insurance application which could deny him coverage in the event of an accident. The issue of innocent misrepresentation is not before the Court at this time. We decline to address the hypothetical issue raised by the dissent.

on September 11, 1981, or 24 days before the accident. On October 22, 1981, Citizens notified plaintiff that it was rescinding his policy, returned his premiums, and stated that it would not pay him no-fault benefits.

Had innocent third parties been seriously injured in a collision with plaintiff's vehicle, we believe that public policy would compel us to hold that coverage for the accident existed, at least for these third parties. See *State Farm Mutual Automobile Ins Co v Kurylowicz,* 67 Mich App 568; 242 NW2d 530 (1976), *lv den* 397 Mich 827 (1976). In fact, however, in this case we are not concerned with the rights of third parties but, rather, with whether a person should be entitled to collect no-fault benefits when his policy of insurance has been procured through his personal fraud.

We see no distinction between this case and *State Farm Mutual Automobile Ins Co v Allen,* 50 Mich App 71; 212 NW2d 821 (1973). Here, plaintiff signed an affidavit that was false, untrue and fraudulent. There was no mistake or ministerial error but, rather, an outright lie. The plaintiff's actions were dishonest. In *Allen,* there was forgery of the insured's name on the insurance policy. In this case, plaintiff committed perjury. Perjury is a felony. Forgery is a felony. If one cannot profit or benefit from a forgery, should one profit or benefit from perjury? We see no distinction of merit between the two. Public policy should not protect a wrongdoer from his own actions at the expense of an innocent third party.[2]

[2] Although this issue has not been extensively addressed, we acknowledge that some authority exists for the proposition that a policy of automobile insurance, issued in a state which mandates that insurance coverage, cannot be rescinded as void *ab initio* even as to the insured who fraudulently obtained that policy. At the same time, at this juncture, there appears to be no clear majority of decisions going either way and some cases have allowed rescission *ab initio* as

To permit a false and fraudulent application to bind an insurance company will result in protective measures being taken by the insurance industry. If plaintiff's argument is accepted, one can readily foresee the day when agents will no longer be allowed to issue binders by the companies they represent. One who applies for insurance will have to wait until final acceptance and approval is received from the home office. This may take weeks. We do not believe that those who obey the law and are honest in their dealings should be forced to suffer adverse consequences because of a few wrongdoers' fraudulent acts. Public policy protects those who do right; the courts need not be overly solicitous of those persons who attempt to perpetrate fraud in their contractual relationships.

We do not agree that any provision in the no-fault act, MCL 500.3101 *et seq.;* MSA 24.13101 *et seq.,* precludes Citizens from rescinding plaintiff's policy so that it is void *ab initio.* MCL 500.3220; MSA 24.13220 and MCL 500.3224; MSA 24.13224 which plaintiff argues act to bar Citizens' right to rescind the policy *ab initio,* address only the can-

to the insured who has fraudulently obtained the coverage, but not as to innocent third parties. See, *e.g., State Farm Mutual Automobile Ins Co v Wall,* 92 NJ Super 92; 222 A2d 282 (1966). The ALR annotation cited by the dissent is limited in its scope to whether an insurer who issues a policy in a state mandating compulsory insurance can avoid coverage to third parties by rescinding the policy. It does not collect cases discussing the insurer's right vis-à-vis the insured.

To the extent that *Kurylowicz, supra,* p 574, can be read as standing for the premise that after injury or damage an automobile insurance policy becomes absolute, we specifically disagree with it. Both pre-no-fault decisions from this state and decisions from jurisdictions which do not mandate compulsory insurance coverage allow an insurer to rescind *ab initio* an automobile insurance liability policy even where this affects the rights of third parties. See *Keys v Pace,* 358 Mich 74; 99 NW2d 547 (1959). See, also, *inter alia, Fireman's Fund Ins Co v Knutsen,* 132 Vt 383; 324 A2d 223 (1974); *Utica Mutual Ins Co v National Indemnity Co,* 210 Va 769; 173 SE2d 855 (1970); *Governmental Employees Ins Co v Chavis,* 254 SC 507; 176 SE2d 131 (1970).

cellation of automobile liability insurance, not its rescission. There is an important difference between rescission and cancellation which was noted by the Michigan Supreme Court in *Wall v Zynda,* 283 Mich 260, 264; 278 NW 66 (1938):

" 'To rescind a contract is not merely to terminate it, but to abrogate and undo it from the beginning; that is, not merely to release the parties from further obligation to each other in respect to the subject of the contract, but to annul the contract and restore the parties to the relative positions which they would have occupied if no such contract had ever been made. Rescission necessarily involves a repudiation of the contract and a refusal of the moving party to be further bound by it. But this by itself would constitute no more than a breach of the contract or a refusal of performance, while the idea of rescission involves the additional and distinguishing element of a restoration of the *status quo.'* 1 Black on Rescission and Cancellation (2d ed), § 1."

In our opinion MCL 500.3220; MSA 24.13220 and MCL 500.3224; MSA 24.13224 serve only as a limitation on the cancellation of insurance policies issued to honest applicants. In *Allen, supra,* p 80, this Court accepted this proposition, when it held:

"Dodds and Kendall contend that the trial judge erred in denying their motions asserting that under MCL 500.3220; MSA 24.13220 State Farm could not cancel its insurance policy with Allen. This statute, restricting an insurer's power to cancel a policy of insurance, does not limit the court's power to declare a policy inoperative because of fraud or forgery."[3]

Moreover, we believe that MCL 500.3224; MSA

---

[3] Although phrased as not restricting "the court's power to declare a policy" void *ab initio,* the *Allen* Court's decision had the effect of upholding plaintiff's rescission of the insurance policy.

24.13224 impliedly recognizes the continuing vitality of common-law rescission. Subsection 1 of § 3224 states that "[f]ailure to disclose the cancellation by any insured upon any application for insurance shall not be grounds to deny coverage on the basis of fraud by an insurer who may have accepted the risk thereafter". The very fact that the Legislature specifically provided that this type of misrepresentation does not permit the insurer to deny coverage impliedly recognizes that other fraudulent statements or misrepresentations do permit the insurer to rescind the coverage, that is, "to deny coverage".

This is not a case in which the insurer unjustifiably delayed notifying plaintiff of its decision to rescind his policy. Here, the accident had already occurred before Citizens learned of plaintiff's fraud, and this fraud was discovered in a reasonably timely fashion. Under these circumstances, the wrongdoer, plaintiff, must suffer the consequences of his actions.

Because we hold that Citizens permissibly rescinded plaintiff's insurance policy *ab initio,* we turn to the issue raised in Docket No. 70573. There, plaintiff argues that if rescission *ab initio* is allowed, then he is entitled to benefits from Auto-Owners Insurance Company, as the servicing carrier for the assigned claims facility. Pursuant to MCL 500.3113(b); MSA 24.13113(b), a person is not entitled to collect personal protection insurance benefits through the assigned claims facility if he is the owner or registrant of a motor vehicle which is involved in an accident and if he does not possess the required no-fault automobile insurance coverage. Since we conclude that plaintiff's deception permitted Citizens to rescind the policy *ab initio* as to his personal right to collect no-fault

benefits, we believe that plaintiff's claim against
the assigned claims facility must fail under MCL
500.3113(b); MSA 24.13113(b).

The judment in Docket No. 70392 is reversed
and the judgment in Docket No. 70573 is affirmed.

R. B. BURNS, P.J., concurred.

V. J. BRENNAN, J. *(dissenting).* I respectfully
dissent. Defendant Citizens Insurance Company of
America seeks reversal of the trial court's grant of
a summary judgment in favor of plaintiff under
GCR 1963, 117.2(3). Summary judgment under
GCR 1963, 117.2(3) should only be granted where
there is no genuine issue as to any material fact.
The court must be satisfied that it is impossible for
the claim or defense to be supported at trial
because of some deficiency which cannot be over-
come. *Rizzo v Kretschmer,* 389 Mich 363, 372; 207
NW2d 316 (1973). It is my opinion that it was
proper for the trial court to entertain a motion for
summary judgment as the question to be resolved
was strictly a question of law and no factual
dispute existed.

The crux of the instant case is whether the
misrepresentation by plaintiff in his application
for automobile insurance will justify a determina-
tion that his automobile insurance policy was void
*ab initio.* This Court has thrice considered the
issue in factual situations similar to that of the
case at bar. In *State Farm Mutual Automobile Ins
Co v Kurylowicz,* 67 Mich App 568; 242 NW2d 530
(1976), *lv den* 397 Mich 827 (1976), (a case which
accrued prior to the enactment of the "no-fault
act") while applying for automobile insurance, the
defendant indicated that his driver's license had
not been suspended or revoked at any time during
the five years preceding his application. In fact,

during the five-year period, the defendant's license had been suspended for one month. After plaintiff issued defendant's policy, defendant was involved in an automobile accident in which one person was killed and five other persons were injured. Two months later, defendant was involved in another accident. On August 23, 1971, State Farm declared a rescission of the policy retroactive to May 10, 1971, alleging as grounds that the defendant had misrepresented material facts in his application concerning previous revocation or suspension of his driver's license. *Id.,* p 570. After examining the public policy behind the statutes regulating automobile liability insurance in Michigan and similar cases in other jurisdictions, the Court held that the misrepresentation of an insured would not prevent recovery against the insurer by third parties who had been injured by the insured. *Id.,* p 578. The Court also held that where an automobile liability insurer retains premiums, notwithstanding grounds for cancellation reasonably discoverable by the insurer during the 55-day statutory period as prescribed by the statute in effect at the time, MCL 500.3220; MSA 24.13220, the insurer will be estopped to assert that grounds for rescission exist thereafter. *Id.,* p 579.

The Court's decision in *Kurylowicz* was followed in *Frankenmuth Mutual Ins Co v Latham,* 103 Mich App 66; 302 NW2d 329 (1981). In *Frankenmuth,* defendant made misrepresentations in his application for automobile insurance. He represented that he was not under any suspension or revocation of driving privileges in Ohio or in any other state. This was not the case as Latham had driving infractions which would have been material to Frankenmuth's decision to issue insurance coverage. Approximately two and one-half months

after the policy was issued, an automobile owned and operated by Latham struck and injured a pedestrian. The Court, citing *Kurylowicz,* found that the trial court correctly held that the policy was in full force and effect at the time of the accident.

In *State Farm Mutual Automobile Ins Co v Allen,* 50 Mich App 71; 212 NW2d 821 (1973), this Court reached a result contrary to the holdings in *Kurylowicz* and *Latham, supra.* However, *Allen* did not involve a misrepresentation by the insured. Rather, it involved the forgery of the insured's name on the insurance application. See *Kurylowicz, supra,* p 578. The instant case differs from *Kurylowicz, Frankenmuth,* and *Allen, supra,* because plaintiff, the insured party, is not a third party seeking to recover the benefits of the policies. However, it is my opinion that the public policy reasons and legal rationale applied by this Court in *Kurylowicz* and *Frankenmuth* apply with equal force to the factual situation present in the instant case.

Michigan's so-called "no-fault insurance act" is a compulsory insurance statute, the purpose of which is to ensure compensation to persons injured in automobile accidents. *Hill v Aetna Life & Casualty Co,* 79 Mich App 725, 728; 263 NW2d 27 (1977); *Pollock v Frankenmuth Mutual Ins Co,* 79 Mich App 218, 222; 261 NW2d 554 (1977). This Court, expounding upon this statutory purpose, stated as follows:

"It is the policy of this state that persons who suffer loss due to the tragedy of automobile accidents in this state shall have a source and a means of recovery. Given this policy, it is questionable whether a policy of automobile liability insurance can ever be held void *ab*

*initio* after injury covered by the policy occurs. Generally, it is held that:

" 'The liability of the insurer with respect to insurance required by the act becomes absolute whenever injury or damage covered by such policy occurs * * * no statement made by the insured or on his behalf and no violation of the policy provisions may be used to defeat or avoid the policy.' 1 Long, The Law of Liability Insurance, § 3.25, pp 3-83—3-84. See *Detroit Automobile Inter-Ins Exchange v Ayvazian,* 62 Mich App 94; 233 NW2d 200 (1975)." *Kurylowicz, supra,* p 574.

While the Court did not decide the question of whether a policy of automobile liability insurance can ever be held void *ab initio* after an injury covered by the policy occurs, its discussion is instructive as to that panel's position on that issue. Further, it should be noted that the second paragraph of the passage quoted above was quoted with approval by another panel in *Latham, supra.*

Not only does it appear that allowing an insurance company to rescind a policy of automobile liability insurance *ab initio* would run contrary to the stated policy of the Michigan insurance legislation, it also appears to be incompatible with the compulsory nature of the no-fault insurance act. The act requires that the owner or registrant of a motor vehicle maintain security, usually in the form of insurance, for payment of benefits of personal protection insurance, MCL 500.3101(1); MSA 24.13101(1). The operation of a vehicle which is not so insured constitutes a misdemeanor, punishable by fine and/or imprisonment, MCL 500.3102(2); MSA 24.13102(2). In addition to the possible criminal charge, the owner of a vehicle which is not insured is not entitled to recover personal protection insurance benefits. MCL 500.3113(b); MSA 24.13113(b).

The Michigan Legislature was cognizant of the hardships a compulsory insurance scheme could bring to bear on persons whose insurance coverage was to be terminated for some reason. To ameliorate these hardships, the Legislature provided that notice must be given before a policy could be terminated. MCL 500.3224(3); MSA 24.13224(3). The purpose of this notice period is to allow an insured to obtain other insurance prior to the termination of his coverage. Termination *ab initio* runs contrary to the statutory purpose as it leaves the insured without insurance from the time he obtained his initial policy and does not allow that person a reasonable time to obtain other insurance. Other portions of the Insurance Code also indicate that rescission *ab initio* is not a remedy available to insurers under the compulsory insurance scheme of this state.

Examination of the portions of the Insurance Code dealing with termination of insurance coverage indicates that the statutes were drafted in such a manner as to prohibit an insurer from terminating personal injury protection prior to giving prospective notice to its insured. MCL 500.3220; MSA 24.13220 states as follows:

"Sec. 3220. Subject to the following provisions no insurer licensed to write automobile liability coverage, after a policy has been in effect 55 days or if the policy is a renewal, effective immediately, shall cancel a policy of automobile liability insurance except for any 1 or more of the following reasons:

"(a) That during the 55 days following the date of original issue thereof the risk is unacceptable to the insurer.

"(b) That the named insured or any other operator, either resident of the same household or who customarily operates an automobile insured under the policy has had his operator's license suspended during the

policy period and the revocation or suspension has become final."

This section of the Insurance Code is augmented by MCL 500.3224; MSA 24.13224 which states:

"Sec. 3224. (1) The cancellation of a policy of insurance within the 55-day period enumerated in subdivision (a) of section 3220 shall not be subject to appeal by the insured. Failure to disclose the cancellation by any insured upon any application for insurance shall not be grounds to deny coverage on the basis of fraud by an insurer who may have accepted the risk thereafter.

"(2) For the provisions of this chapter only, no cancellation shall be effective unless a written notice of cancellation is mailed by certified mail, return receipt requested, to the insured at the last address known to the insurer either through its records, the personal records of the agent who wrote the policy, or as supplied by the insured.

"(3) The notice shall be mailed at least 20 days prior to the effective date of cancellation. For the purpose of this chapter only, delivery of such written notice by the insurer shall be the equivalent of mailing. The notice shall contain the reasons for the cancellation and shall state in bold type that the insured has the statutory right within 7 days from the date of mailing to appeal to the department. The commissioner shall approve the form of the cancellation notice."

In making its ruling, the trial court noted that MCL 500.3224(3); MSA 24.13224(3) mandates that notice shall be given of cancellation and such shall be mailed at least 20 days prior to the effective date of cancellation. The court went on to state that "Citizens did not cancel in accordance with the statutory requirements and therefore the policy was in effect on the date of plaintiff's injury". Citizens argues that the statutes cited by plaintiff and the trial judge are inapplicable since they

relate to cancellations and not rescission *ab initio*. This argument has been rejected by this Court. In *Kurylowicz, supra,* pp 577-578, the Court stated:

"State Farm argues that the statutes cited by the trial judge and by the defendants are inapplicable since they relate to cancellations and not rescission *ab initio*. Such a construction would require that we hold, in effect, that although an insurer may not cancel a policy of automobile liability insurance based on fraud subsequent to the payment of a claim under the policy, it may nevertheless treat the policy as void *ab initio* and avoid liability on the policy altogether. We do not think that the Legislature intended such an absurd consequence."

Another factor which should be considered is that Citizens had the information necessary to obtain plaintiff's driving record for approximately 20 days prior to the accident. Citizens ordered plaintiff's driving record approximately two weeks after receipt of the application. After receiving the record, Citizens did not review it until October 5, 1981. This indicates that Citizens had an opportunity to discover plaintiff's driving record but neglected to do so promptly.

It should be noted that other jurisdictions have held that an insurer may not rescind an automobile insurance policy *ab initio*. In *Pearce v Southern Guaranty Ins Co,* 246 Ga 33; 268 SE2d 623 (1980), the Georgia Supreme Court held that "an automobile insurance policy providing basic third-party liability insurance and basic personal injury protection benefits (no-fault) issued pursuant to Georgia law cannot be voided retrospectively under Code Ann, § 56-2409". 246 Ga 39. *Pearce* involved a factual situation where the insured misrepresented his driving record to the insurer in order to procure no-fault insurance. Approxi-

mately one month after obtaining the insurance, the insured was involved in an automobile accident in which he and a passenger were killed and the occupants of the other vehicle sustained personal injuries. An action for declaratory judgment was filed in the federal district court, the result of which was appealed to the United States Court of Appeals for the Fifth Circuit. The Federal Appeals Court certified the following question for the Supreme Court of Georgia:

"After the effective date of the Georgia No-Fault Act (Georgia Motor Vehicle Reparations Act, Georgia Laws 1974, pp 113, *et seq.,* Ga Code Ann, chap 56-34B), can an automobile insurance policy providing basic third-party liability insurance and basic personal injury protection benefits, issued to a Georgia resident, be voided *ab initio* based upon misrepresentations made in the application for the insurance, as provided by Ga Code Ann, § 56-2409, after an automobile accident giving rise to a claimed loss?" 246 Ga 35.

In response to the question, the Georgia Supreme Court held that an automobile insurance policy providing basic third-party liability insurance and basic personal injury protection benefits (no-fault) issued pursuant to Georgia law cannot be voided retrospectively. 246 Ga 39. See, also, Anno: *Rescission or avoidance, for fraud or misrepresentation, of compulsory, financial responsibility, or assigned risk automobile insurance,* 83 ALR2d 1104; *Sentry Indemnity Co v Sharif,* 156 Ga App 828; 280 SE2d 354 (1980), aff'd 248 Ga 395; 282 SE2d 907 (1981).

At its core, the instant case turns on whether a person who makes misrepresentations on an application for automobile insurance should be allowed to recover benefits through the policy which he has obtained through those misrepresentations. While the courts are loathe to reward a wrongdoer

for his wrongful acts, such concerns are sometimes secondary to the policy implications of not granting the requested relief. Though in the instant case there is indication that plaintiff intentionally misled the insurer while applying for the benefits, it is very conceivable that in many cases a person would make an innocent misrepresentation on such an application which could be used to deny him coverage in the event of an accident. Further, it is the policy behind our compulsory insurance scheme that "persons who suffer loss due to the tragedy of automobile accidents in this state shall have a source and a means of recovery". *Kurylowicz, supra,* p 574. On the basis of this policy and what has been stated above, I would affirm the trial court's order granting plaintiff's motion for summary judgment.