# STATE OF MICHIGAN

# COURT OF APPEALS

---

AUTO-OWNERS INSURANCE COMPANY,

      Plaintiff/Counter-Defendant-
      Appellee,

v

YAHIA MOTAN and MOTAN YAHIA, INC.,
d/b/a M&S QUICK STOP,

      Defendants/Counter-
      Plaintiffs/Third-Party Plaintiffs-
      Appellants,

and

JAMES M. ANDERSON and J.M. ANDERSON
AGENCY, L.L.C.,

      Third-Party Defendants-Appellees.

UNPUBLISHED
September 8, 2015

No. 321059
Montcalm Circuit Court
LC No. 2013-017405-CK

---

Before: TALBOT, C.J., and K. F. KELLY and SERVITTO, JJ.

PER CURIAM.

In this declaratory judgment action, defendants/counter-plaintiffs/third-party plaintiffs Yahia Motan and Motan Yahia, Inc. d/b/a M&S Quick Stop (collectively "Motan"), appeal as of right the trial court's order granting summary disposition in favor of both plaintiff/counter-defendant Auto-Owners Insurance Company ("Auto-Owners') as well as third-party defendants James M. Anderson and J.M. Anderson Agency, LLC (collectively "Anderson") pursuant to MCR 2.116(C)(10). We affirm, but remand this case with instructions to the trial court to order Auto-Owners to return all premiums paid to Auto-Owners by Motan.

The instant litigation concerns a commercial insurance policy entered into between M&S Quick Stop (the insured) and Auto-Owners (the insurer). In late June 2012, Najieb Jabbar, an agent of Motan and M&S Quick Stop, contacted James Anderson, an independent insurance agent, indicating that he wanted to purchase insurance for M&S Quick Stop. Subsequently, on July 10, 2012, James Anderson and Jabbar met in person, and James Anderson filled out an application for insurance using information given to him by Jabbar. There is no dispute that,

-1-

after James Anderson completed the application, Jabbar signed it without reviewing it for accuracy. There is also no dispute that the application contained numerous misrepresentations. For instance, where the applicant is asked if any previous policy coverage had been declined, cancelled, or non-renewed in the previous 3 years, Anderson checked the "no" box. In reality, however, M&S Quick stop had two separate insurance policies cancelled or non-renewed within that time frame, including one from Westfield Insurance Company that was non-renewed in July 2011, and a previous Auto-Owners policy that was cancelled in June 2012 for non-payment of premiums. Next, in several different places on the application, Anderson indicated that M&S Quick Stop had no prior losses or claims. In reality, however, M&S Quick Stop had several previous claims, including one in April 2011 after a vehicle crashed into the store. Finally, where the applicant is asked if it had any previous violations, suspensions, or revocations of its liquor license in the previous five years, Anderson indicated "no." In reality, however, between May 2008 and May 2012, M&S Quick Stop was cited for numerous liquor license violations by the Michigan Department of Licensing and Regulatory Affairs for non-sufficient funds checks.

Based on the representations in the application, Auto-Owners issued an insurance policy to M&S Quick Stop on July 10, 2012. Subsequently, however, it sent M&S Quick Stop a notice of cancellation, indicating that the policy would cease to exist at 12:01 a.m. on October 6, 2012. The cancellation was based on the fact that Auto-Owners had learned of the previously cancelled Auto-Owners policy.

On September 16, 2012—after the notice of cancellation was sent but before it became effective—M&S Quick Stop was destroyed by a fire. Motan subsequently submitted a claim, but Auto-Owners denied coverage and initiated this action seeking a declaratory judgment that the insurance policy was void by virtue of several additional misrepresentations in the application. Motan responded with a counter-complaint alleging breach of contract. It further initiated a third-party complaint against Anderson alleging that he negligently filled out the application.

The trial court granted summary disposition to Auto-Owners pursuant to MCR 2.116(C)(10), finding that Motan had made material misrepresentations in the application for insurance which affected Auto-Owners' acceptance of the risk, such that Auto-Owners could properly rescind or void the insurance policy. The trial court further granted summary disposition in favor of Anderson pursuant to MCR 2.116(C)(10), finding that the misrepresentations in the application were attributable to Motan rather than Anderson. This appeal followed.

We review de novo a trial court's decision on a motion for summary disposition. *BC Tile & Marble Co, Inc v Multi Bldg Co, Inc*, 288 Mich App 576, 583; 794 NW2d 76 (2010). A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999). In deciding a motion under MCR 2.116(C)(10), the trial court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties in the light most favorable to the nonmoving party. *Id*. "Where the proffered evidence fails to establish a genuine issue regarding any material fact, the moving party is entitled to judgment as a matter of law." *Id*.

With respect to whether summary disposition was appropriate in favor of Auto-Owners, it is well-settled that an insurer may rescind an insurance policy because of a material

misrepresentation in the application for insurance. *Titan Ins Co v Hyten*, 491 Mich 547, 558; 817 NW2d 562 (2012); *Burton v Wolverine Mut Ins Co*, 213 Mich App 514, 517; 540 NW2d 480 (1995). Here, the policy provided that the coverage would be "void in any case of fraud by you as it relates to this Coverage Part at any time. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning . . . the Covered Property[.]"

Motan does not dispute that the application for insurance contained numerous misrepresentations. It argues, however, that Auto-Owners waived its right to rescind or void the insurance policy once it chose, in August 2012, to cancel the policy at a specific future date and thereafter required Motan to pay premiums for coverage up to the effective date of cancellation. We disagree.

We do not dispute the general proposition that an insurer may waive its right to rescission by first seeking cancellation of an insurance policy on the same grounds. See *Burton*, 213 Mich App at 517-518. However, "a litigant cannot be held estopped to assert a defense, or to have waived his right thereto, because of facts he does not know[.]" *Titan*, 491 Mich at 562, quoting *Keys v Pace*, 358 Mich 74, 84; 99 NW2d 547 (1959). Here, Auto-Owners based its cancellation on the fact that Motan had failed to disclose that its previous Auto-Owners policy was cancelled for non-payment. Subsequently, however, Auto-Owners discovered additional misrepresentations, including the failure to disclose the previous non-renewal of the Westfield policy and the misrepresentations regarding previous claims and liquor license violations, which prompted it to seek rescission. In other words, the misrepresentation that formed the basis for Auto-Owners' decision to cancel the policy was different from the misrepresentations that formed the basis for its subsequent decision to void the policy. Cf. *Burton*, 213 Mich App at 517, wherein the insurer discovered material misrepresentation in the application and chose to issue a notice of cancellation based on the misrepresentations *rather than* rescind the contract, then thereafter attempted to rescind the contract based upon the same material misrepresentations. Because there is no evidence that Auto-Owners was aware of these additional misrepresentations at the time it cancelled the policy (nor did not base its cancellation on the material misrepresentations), it did not waive its right to later rescind or void the policy on those grounds. *Titan*, 491 Mich at 562.

Motan additionally argues that Auto-Owners was not entitled to rescind or void the policy because there are genuine issues of material fact as to whether the misrepresentations were material or intentional. We disagree.

First, as to materiality, "a fact or representation in an application is 'material' where communication of it would have had the effect of 'substantially increasing the chances of loss insured against so as to bring about a rejection of the risk or the charging of an increased premium.' " *Oade v Jackson Nat'l Life Ins Co of Mich*, 465 Mich 244, 253-254; 632 NW2d 126 (2001), quoting *Keys*, 358 Mich at 82. In this case, Auto-Owners provided an affidavit of one of its underwriters, who averred that the misrepresentations were material and that Auto-Owners would not have issued the insurance policy had it been aware of the various misrepresentations. This has been held sufficient to establish materiality. *Montgomery v Fidelity & Guaranty Life Ins Co*, 269 Mich App 126, 129; 713 NW2d 801 (2005); *Lash v Allstate Ins Co*, 210 Mich App 98, 103; 532 NW2d 869 (1995). Second, if the insurer relies on the misrepresentation, rescission

is justified regardless of whether the misrepresentation was innocent or intentional. *Lash*, 210 Mich App at 103. "Reliance may exist when the misrepresentation relates to the insurer's guidelines for determining eligibility for coverage." *Lake States Ins Co v Wilson*, 231 Mich App 327, 331; 586 NW2d 113 (1998), citing *Lash*, 210 Mich App at 101. Here, it is clear, based on the affidavit of Auto-Owners' underwriter, that Auto-Owners relied upon the misrepresentations in the application to determine that Motan was eligible for insurance coverage and to determine the premiums to be paid. Given its reliance, Auto-Owners was entitled to rescind the insurance policy "even accepting that [the misrepresentations were] innocent." *Lash*, 210 Mich App at 104.[1] Summary disposition was thus properly granted in favor of Auto-Owners.

Having reached the above conclusion, we nonetheless remand this case with instructions to the trial court to order Auto-Owners to return all premiums paid to Auto-Owners by Motan. Rescission, by its very nature, requires restitution because it is based on the idea that the parties should be returned to the status quo. *Lash*, 210 Mich App at 102; *Cunningham v Citizens Ins Co of America*, 133 Mich App 471, 479; 350 NW2d 283 (1984). Thus, when an insurer seeks to rescind a contract, it must generally return all premiums paid by the insured. See *Burton*, 213 Mich App at 520. We find that the same applies with respect to Auto-Owners voiding the policy in this case.

We recognize that Auto-Owners claims that it *voided* the policy under the explicit voiding clause contained therein, rather than rescind the policy, and thus was not required to return the premiums. Auto-Owners cites to *Cohen v Auto Club Ins Ass'n*, 463 Mich 525; 620 NW2d 840 (2001) in support of this position. However, *Cohen* did not hold that when an insurer voids a policy under explicit policy language it need not return premiums. *Cohen* did not even address, for that matter, a misrepresentation on an initial application for insurance. Nor did any of the other cases cited by Auto-Owners. See *Bahri v IDS Prop Cas Ins Co*, 308 Mich App 420; 864 NW2d 609 (2014)(fraud in procuring PIP benefits after an accident voids coverage); *TBCI, PC v State Farm Mut Auto Ins Co*, 289 Mich App 39; 795 NW2d 229 (2010)(same). While these policy-voiding cases did not mention a return of premiums, it does not necessarily follow that the cases stand for the proposition that a return of premiums is never required when a policy is voided. Auto-Owners has provided no authority holding that where an applicant makes a material misrepresentation in the application for insurance, suffers a loss and seeks to enforce the policy, and the insurer thereafter discovers the misrepresentations and seeks to void the policy the premiums should be treated any differently than if the insurer had rescinded the policy.

We are more persuaded by the language in *Burton*, 213 Mich App at 520, wherein a panel of this Court stated that an insurer cannot earn a premium without having to provide coverage. "Rather, it must either rescind the policy upon discovery of the misrepresentation and refund the premium or cancel the policy, retaining the premium earned until the effective date of the

---

[1] Moreover, the policy also provides that "[t]his Coverage Part is void in any case of fraud by you as it relates to this Coverage Part at any time." There are several theories to establish fraud, one of which is innocent misrepresentation. See, e.g., *M&D Inc v W. B. McConkey*, 231 Mich App 22, 26; 585 NW2d 33 (1998).

cancellation and provide coverage until the effective date of the cancellation. But it cannot have its premium and deny coverage too." Thus, the trial court erred in allowing Auto-Owners to void the policy (after it had already issued a notice of cancellation) without ordering Auto-Owners to return the premiums.

With respect to whether summary disposition was appropriate in favor of Anderson, we find instructive our opinion in *Montgomery*, 269 Mich App at 126. In that case, the plaintiff and her husband applied for a life insurance policy with the defendant insurance company. *Montgomery*, 269 Mich App at 127. Although the husband had a significant smoking habit, the application for insurance represented that he had not used tobacco within the previous five years. *Id*. After the defendant issued the policy, the husband was killed in a car accident. *Id*. The plaintiff then filed a claim for life insurance benefits, but the defendant denied the claim on the basis of the misrepresentation. *Id*. at 128. On appeal from the trial court's grant of summary disposition to the defendant, the plaintiff argued that it was the insurance agent, rather than she or her husband, who completed the application, and that neither she nor her husband read the application before signing it. *Id*. at 129. We found that it was "not material" who misrepresented the husband's tobacco use on the application because the plaintiff and her husband each signed the application, thereby attesting that they had read the questions and answers and that the information provided was complete, true, and accurate. *Id*. at 130. We reiterated the long-standing principle that "[a] contracting party has a duty to examine a contract and know what the party has signed, and the other contracting party cannot be made to suffer for neglect of that duty." *Id*. (citations omitted). Thus, because the plaintiff and her husband signed the application after having an opportunity to review it, "there was no genuine issue of material fact" that the material misrepresentation was attributable to the plaintiff and/or her husband. *Id*.

The same holds true in this case. Obviously, the parties dispute whether the misrepresentations in the application resulted from Jabbar providing misinformation to James Anderson or from Anderson mischaracterizing the correct information given to him by Jabbar. There is no dispute, however, that after Anderson filled out the application, Jabbar signed it. By doing so, he ratified that all of the information in the application was complete and accurate. *Id*. It is of no import that Jabbar failed to review the application for accuracy before signing it; his signature is valid just the same. *Id*. Thus, regardless of whether the insurance application was actually completed by Anderson, and regardless of whether Anderson may have mischaracterized some of the information provided to him by Jabbar, the misrepresentations were attributable to Jabbar, not Anderson. Accordingly, summary disposition was properly granted in Anderson's favor.

We affirm the trial court's order granting summary disposition in favor of Auto-Owners and Anderson, but remand this case with instructions to the trial court to order Auto-Owners to return all premiums paid to Auto-Owners by Motan. We do not retain jurisdiction.

/s/ Michael J. Talbot
/s/ Kirsten Frank Kelly
/s/ Deborah A. Servitto