*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

NORTHLAND RADIOLOGY, INC,
THERAMEDIC REHAB & PHYSICAL THERAPY,
and INTEGRATIVE NEUROLOGY, PLLC,

      Plaintiffs,

and

ZMC PHARMACY, LLC and NORTHWEST
LABS, INC,

      Intervening Plaintiffs,

and

AMERICAN ANESTHESIA ASSOCIATES, LLC,

      Intervening Plaintiff-Appellant/Cross-
      Appellee,

v

USAA CASUALTY INSURANCE COMPANY and
AMERIPRISE INSURANCE COMPANY,

      Defendants,

and

IDS PROPERTY INSURANCE COMPANY,

      Defendant-Appellee/Cross-Appellant.

UNPUBLISHED
June 18, 2020

No. 346345
Oakland Circuit Court
LC No. 2017-160368-NF

Before: GADOLA, P.J., and CAVANAGH and M. J. KELLY, JJ.

PER CURIAM.

-1-

Intervening plaintiff, American Anesthesia Associates, LLC (AAA), appeals as of right the order of the trial court granting defendant, IDS Property Insurance Company (IDS), summary disposition under MCR 2.116(C)(10). IDS cross-appeals as of right the same order, challenging the trial court's determination that it was obligated to refund the full premium amount to its insureds to effectuate rescission of its no-fault insurance policy. We affirm in part and vacate in part the trial court's order.

## I. FACTS

This case involves a policy of no-fault insurance issued by IDS to Isha Simpson and Aquanetta Terry. Simpson and Terry are friends who co-own a 2014 Chrysler 300. Simpson and Terry are not related legally or biologically, and they do not share a residence.

In 2016, Simpson and Terry applied to purchase a policy of no-fault insurance from IDS. They listed themselves at the top of the first page of the application next to "applicant" and provided Simpson's address in Redford, Michigan. The application asked for driver information with the following instruction: "List all drivers in your household unless they have their own car and insurance. Spouses must be listed. If you have more than four drivers, please attach a separate sheet." Simpson and Terry listed themselves as drivers. Above the signature line were warnings that the statements made in the application were made for the purpose of procuring an insurance policy and that the policy could be declined, canceled, or rescinded if the statements were untrue or incomplete. Simpson and Terry both signed the application. Both Simpson and Terry later testified that Terry has her own residence in Detroit and never lived at Simpson's Redford address. Terry testified that she and Simpson used Simpson's address on the application because it was less expensive to purchase insurance with Simpson's Redford address than with Terry's Detroit address.

IDS issued a policy of no-fault insurance to Simpson and Terry, effective September 30, 2016, listing their address as the Redford, Michigan address provided by Simpson and Terry in the application. The policy included the 2014 Chrysler 300 as an insured vehicle. The policy warned that coverage would not be provided to a claimant who intentionally concealed or misrepresented a material fact, engaged in fraud, or made a false statement. Specifically, the policy provided:

**Fraud**

We do not provide coverage for any **insured** or person making claim under this policy who, whether before or after a loss, has:

1. Intentionally concealed or misrepresented any material fact or circumstance;

2. Engaged in fraudulent conduct; or

3. Made false statements;

relating to this insurance and/or in connection with any accident or loss for which coverage is sought under this policy.

In February 2017, Simpson was a passenger in the Chrysler 300 when another car hit the vehicle. Simpson sued IDS, as well as the driver and the owner of the other vehicle, seeking damages for injuries arising from the car accident and alleging that IDS refused to pay personal protection insurance benefits owed under the no-fault act, MCL 500.3101 *et seq.* Simpson subsequently assigned her right to seek reimbursement for services to various healthcare providers, including AAA. Plaintiffs in this lawsuit are healthcare providers seeking reimbursement for Simpson's medical expenses from the defendant insurers, including IDS. AAA, a healthcare provider, intervened as a third-party plaintiff, also seeking reimbursement for Simpson's medical expenses.

In the process of reviewing Simpson's claim, IDS learned that Simpson and Terry did not live at the same address. Corey Bogenschutz, working in IDS's underwriting department, provided the following information about IDS's underwriting guidelines:

8. The IDS Underwriting Guidelines provide that private, passenger motor vehicles must be titled solely to the named insured and/or spouse, unless that spouse is not a household member or that a vehicle may be jointly titled to [a] named insured and other family member that is a permanent resident of the household.

9. In addition, [] two unmarried individuals living together long term who wish to have a policy of insurance together must garage the insured vehicle at the same residence. Furthermore, vehicles must be titled solely to the named insured, (and/or spouse unless that spouse is not a household member), and the vehicle may also be jointly titled to a named insured and other family member that is a permanent resident of the household.

Bogenschutz testified that based upon these guidelines, because the Chrysler 300 was co-titled to Simpson and Terry, Simpson and Terry were not related, Terry never lived at the Redford address, and the vehicle was not garaged at the address, IDS would not have issued the policy.

IDS notified Simpson that it was rescinding the policy as of its effective date of September 30, 2016, based upon Simpson's and Terry's material misrepresentations, and therefore was denying Simpson's claim for benefits sought in connection with the February 2017 accident. IDS stated that it was tendering back the amount of premiums paid ($3,677.17), less the amount of benefits paid ($1,190.37 for a previous claim and $9,246.96 for the current claim), which exceeded the premiums, so no amount remained to be refunded.

IDS moved for summary disposition under MCR 2.116(C)(10), arguing that it was not liable for payment of benefits, having rescinded the policy on the basis of the misrepresentation by the insureds. The trial court granted IDS's motion, determining that there was no genuine issue of material fact that Simpson made a material misrepresentation on the application by listing Terry as a driver living in Simpson's household when evidence showed that Simpson and Terry were not related and Terry never lived at Simpson's address. The trial court concluded, however, that IDS was required to refund the premiums paid when it rescinded the policy. AAA now appeals, and IDS cross-appeals.

## II. ANALYSIS

### A. STANDARD OF REVIEW

We review de novo a trial court's decision on a motion for summary disposition. *Johnson v Vanderkooi*, 502 Mich 751, 761; 918 NW2d 785 (2018). When reviewing a trial court's decision granting summary disposition under MCR 2.116(C)(10), we consider all documentary evidence submitted by the parties in the light most favorable to the nonmoving party. *Dawoud v State Farm Mut Auto Ins Co*, 317 Mich App 517, 520; 895 NW2d 188 (2016). Summary disposition under MCR 2.116(C)(10) is warranted when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Id*. We also review de novo issues involving the interpretation of statutes and the interpretation of a contract. *Titan Ins Co v Hyten*, 491 Mich 547, 553; 817 NW2d 562 (2012). This Court also reviews equitable issues de novo, including issues regarding rescission. *Kaftan v Kaftan*, 300 Mich App 661, 665; 834 NW2d 657 (2013).

### B. SUMMARY DISPOSITION

AAA contends that the trial court erred by granting IDS summary disposition under MCR 2.116(C)(10), arguing that the trial court incorrectly concluded that Simpson made a material misrepresentation, and also incorrectly concluded that the circumstances of this case warranted rescission. We disagree.

### 1. MATERIAL MISREPRESENTATION

Automobile insurance policies are governed by both statutory provisions and the common law applicable to contracts. *Bazzi v Sentinel Ins Co*, 502 Mich 390, 399; 919 NW2d 20 (2018). That is, an insurance policy is a contract that is subject to the rules of contract interpretation and common-law contract defenses, including fraud, unless those defenses are prohibited by statute. *Id*. The no-fault act does not prohibit an insurer from invoking the common-law defense of fraud, nor does it limit or narrow the remedy of rescission. *Id*.

Fraudulent misrepresentation may support an equitable remedy, such as rescission of a contract. *Titan*, 491 Mich at 555. To establish fraudulent misrepresentation, the plaintiff must show that (1) the defendant made a material representation, (2) it was false, (3) when the defendant made the representation, the defendant knew it was false, or made it recklessly, without knowledge of its truth and as a positive assertion, (4) the defendant made the representation intending the plaintiff to act upon it, (5) the plaintiff acted in reliance upon it, and (6) the plaintiff suffered damage as a result. *Id*. A misrepresentation is material when an insurer would not have issued a policy in the manner or at the rate at which it was issued if the misrepresentation or nondisclosed fact had been known to the insurer. *Oade v Jackson Nat'l Life Ins Co of Mich*, 465 Mich 244, 253-254; 632 NW2d 126 (2001). An insurer's statement that it would not have issued a policy if it had known the previously-undisclosed information is sufficient to establish materiality. See *Lash v Allstate Ins Co*, 210 Mich App 98, 103-104; 532 NW2d 869 (1995).

In this case, the evidence supports the trial court's finding that Simpson and Terry made material misrepresentations in the application for insurance. As the trial court noted in its opinion:

The evidence presented to the Court established that Simpson and Terry never lived together at [the Redford address], and the Application required Simpson to list all drivers in her household. Terry testified that she lived [in Detroit] at the time of the Application, and that she never lived at the [Redford] address. Terry further testified that she was not related to Simpson. . . . Terry further testified that she went through Simpson for insurance because Terry had a Detroit address and the insurance would be cheaper. . . . Simpson also testified that Terry never lived at the [Redford] address.

Contrary to AAA's argument that IDS did not establish that the misrepresentation was false and knowingly or recklessly made, the testimony of both Simpson and Terry demonstrated that they knew their representations were false. Further, this Court has stated that "[r]escission is justified without regard to the intentional nature of the misrepresentation, as long as it is relied upon by the insurer. Reliance may exist when the misrepresentation relates to the insurer's guidelines for determining eligibility for coverage." *21st Century Premier Ins Co v Zufelt*, 315 Mich App 437, 446; 889 NW2d 759 (2016) (quotation marks and citation omitted). Here, the trial court observed that the affidavit of IDS underwriter Bogenshutz stated that based upon its underwriting guidelines, IDS would not have issued the policy to Simpson and Terry if it had known that they were not living together. Accordingly, the trial court's determination that Simpson and Terry made material misrepresentations in the application is supported by the record.

We also reject AAA's argument that the grammar and wording of the application form caused Simpson and Terry to provide incorrect information. The problem in this case is not, as AAA frames it, Terry's failure to provide her address separately from Simpson's address because the format of the application did not provide for a separate address; rather, the misrepresentation arose from Simpson's and Terry's representation on the application that they shared an address and were members of the same household for the purpose of procuring a single policy. AAA's observation that the application only has space for one address does not present a hurdle to be overcome by the applicant, as AAA suggests, but rather reflects the common understanding that drivers in the same household live at the same address.

We also reject AAA's argument that there was no material misrepresentation because it is acceptable to seek cheaper insurance. Shopping for quotes from different insurers is a valid way to obtain cheaper insurance. Misrepresenting members of separate households as members of a single household to obtain a single policy is a fraudulent way to obtain cheaper insurance. We similarly reject AAA's argument that IDS should have investigated before issuing the policy. Contrary to AAA's argument, insurers have no duty to investigate fraud in an application for insurance. *Bazzi*, 502 Mich at 403-404.

## 2. BALANCING THE EQUITIES

AAA further contends that this Court should remand this case for consideration of a remedy less severe than rescission because rescission is not an automatic remedy, and is available only when ordered by the trial court after balancing the equities, which did not occur in this case. Again, we disagree.

As noted, the no-fault act does not prohibit an insurer from invoking the common-law defense of fraud, nor does it limit or narrow the remedy of rescission. *Bazzi*, 502 Mich at 406. When an insurer is induced by fraud to issue a policy of insurance, the fraud renders the policy voidable at the option of the insurer. *Bazzi*, 502 Mich at 408. Thus, an insurer may rescind a policy on the basis of a material misrepresentation made in an application for no-fault insurance. *21st Century Premier*, 315 Mich App at 445. When an insurer rescinds an insurance policy as the result of fraud by the insured, the rescission abrogates the policy and returns the parties "to the relative positions that they would have occupied if the contract had never been made." *Bazzi*, 502 Mich at 409.

But although an insurer may rescind a policy that was obtained by misrepresentation, that remedy is not as a matter of right; rather, it is a remedy that the trial court may grant within its discretion. *Bazzi*, 502 Mich at 409. When an insurer seeks rescission of a no-fault policy, the trial court is obligated to balance the equities to determine if the party seeking rescission is entitled to that relief. *Id*. at 410. A trial court is not required to grant rescission, and should not grant that relief when the result would be unjust or inequitable or where rescission is not feasible. *Id*.

In addition, if two equally innocent parties are affected, such as the insurer and a third-party claimant, the trial court is required to determine which innocent party should bear the loss. *Id*. at 410-411. In *Bazzi*, our Supreme Court determined that although the contract between the insurer and the insured in that case was void *ab initio* because the policy was acquired fraudulently, the trial court was required to determine whether, in its discretion, rescission of the policy was available as between the insurer and the plaintiff, an innocent third party seeking PIP benefits under the no-fault act. Thus, the Court in *Bazzi* required the trial court to weigh the equities when determining whether rescinding the policy was an appropriate remedy in that case. *Bazzi*, 502 Mich at 408, 412; see also *Mendelson Orthopedics, PC v Everest Nat'l Ins Co*, 328 Mich App 450, 461-462; 938 NW2d 739 (2019) (the trial court appropriately recognized the insurer's right to rescind the policy, treating it as void *ab initio* as between itself and the insured, but in accordance with *Bazzi*, the trial court should consider and balance the equities to determine, as between the insurer and an innocent third party, whether the equities permit the insurer the equitable remedy of rescission).

In this case, there is no indication that the trial court did not weigh the equities in determining that rescission was a proper remedy as between IDS and Simpson. The trial court noted in its opinion that rescission is not a matter of right, but is instead discretionary with the trial court. The trial court found that Simpson made a material misrepresentation in the application for insurance regarding whether Terry was a member of Simpson's household living at the address stated in the application. The trial court further found that IDS had presented evidence that it would not have issued the policy absent the misrepresentation. The trial court concluded that based upon the evidence IDS permissibly rescinded the policy. In accord, *Bazzi*, 502 Mich at 412 (the policy between the insurer and the insured was void *ab initio* due to the fraudulent manner in which it was acquired).

AAA, however, suggests that the trial court should have further weighed the equities to determine a result that is fair to *all* interested parties, including AAA. In *Bazzi*, the Court held that even though the third-party doctrine has been abrogated, the trial court was nonetheless obligated to consider, as between innocent parties, which party should bear the loss when imposing the

-6-

equitable remedy of rescission. *Id*. at 410-411. The *Bazzi* Court stated that "when two equally innocent parties are affected, the court is required in the exercise of its equitable powers, to determine which blameless party should assume the loss." *Id*. (quotation marks and citations omitted).

In this case, however, AAA is not an innocent party for purposes of this analysis. A healthcare provider stands in the shoes of the insured for purposes of entitlement to benefits, and therefore cannot recover benefits if the insured is not permitted to recover. See *Bahri v IDS Prop Cas Ins Co*, 308 Mich App 420, 424; 864 NW2d 609 (2014). Here, although AAA is innocent of the fraud perpetrated by Simpson and Terry, it is the assignee of Simpson and therefore is essentially the same person as Simpson, standing in her shoes for purposes of recovery against IDS. IDS's rescission of the policy therefore is effective against AAA because it is effective against Simpson. Because AAA is an assignee standing in Simpson's shoes who cannot recover benefits Simpson cannot recover, see *id*., the trial court did not err by not separately considering the equities between AAA and IDS before granting IDS summary disposition.

## C. RETURN OF THE FULL PREMIUM

IDS contends that the trial court erred by concluding that IDS was required to refund the premium in full to the insureds without considering amounts that IDS paid out in benefits under the policy. We agree.

As discussed, an insurance policy that is obtained by fraud may be rescinded and thereby declared void *ab initio* by the insurer. *Bazzi*, 502 Mich at 408. However, rescission is an equitable remedy to be imposed by the trial court rather than an automatic remedy triggered by the discovery of a misrepresentation. *Bazzi*, 502 Mich at 409-410. The purpose of the equitable remedy of rescission is to restore the status quo. That is, a contract that is rescinded is considered never to have existed, and rescission restores the status quo, returning the parties to the positions they occupied before entering into the contract. *Lash v Allstate Ins Co*, 210 Mich App 98, 102; 532 NW2d 869 (1995).

Unlike cancellation of a policy, which permits the insurer to keep that portion of the premiums corresponding to the period of coverage preceding cancellation, rescission requires a full refund of the premiums paid. *Burton v Wolverine Mut Ins Co*, 213 Mich App 514, 520; 540 NW2d 480 (1995). Concomitantly, an insurer entitled to rescind a no-fault insurance policy because of fraud is not obligated to pay benefits under that policy. This Court has reasoned that

> To rescind a contract is not merely to terminate it, but to abrogate and undo it from the beginning; that is, not merely to release the parties from further obligation to each other in respect to the subject of the contract, but to annul the contract and restore the parties to the relative positions which they would have occupied if no such contract had ever been made. [*Lash*, 210 Mich App at 102, quoting *Cunningham v Citizens Ins Co of America*, 133 Mich App 471, 479; 350 NW2d 283 (1984).]

Applying these equitable principles in this case, the trial court correctly determined that IDS was required to refund the premiums in light of the rescission of the policy. However,

requiring IDS to refund the premiums without considering IDS's claim that it had already paid to or on behalf of the insureds more than the amount of the premiums, restores Simpson and Terry to their precontract position, but not IDS. "Setoff is a legal or equitable remedy that may occur when two entities that owe money to each other apply their mutual debts against each other." *Walker v Farmers Ins Exch*, 226 Mich App 75, 79; 572 NW2d 17 (1997). What amount, if any, IDS contends Simpson and Terry owe is unclear from the trial court record. However, IDS should be given an opportunity to present its claim that the refund of the premiums should be weighed against amounts paid by IDS under the policy in the trial court's balancing of the equities.

We affirm the order of the trial court granting IDS summary disposition. We vacate the portion of the order of the trial court ordering that IDS refund the premiums in full, and remand to the trial court for further proceedings consistent with this opinion. We do not retain jurisdiction.


/s/ Michael F. Gadola
/s/ Mark J. Cavanagh
/s/ Michael J. Kelly