# Syllabus

Chief Justice:
Stephen J. Markman

Justices:
Brian K. Zahra
Bridget M. McCormack
David F. Viviano
Richard H. Bernstein
Kurtis T. Wilder
Elizabeth T. Clement

Reporter of Decisions:
Kathryn L. Loomis

This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.

BAZZI v SENTINEL INSURANCE COMPANY

Docket No. 154442. Argued January 11, 2018 (Calendar No. 1). Decided July 18, 2018.

Alli Bazzi brought an action in the Wayne Circuit Court against Sentinel Insurance Company and Citizens Insurance Company, seeking to recover personal protection insurance (PIP) benefits under the no-fault act, MCL 500.3101 *et seq.*, for injuries he received while driving a vehicle leased by his mother, Hala Bazzi. Genex Physical Therapy, Inc., Elite Chiropractic Center, PC, and Transmedic, LLC, intervened in the action to recover payment for the medical services they individually provided to plaintiff for his injuries. Although Hala leased the vehicle in her own name, Sentinel Insurance insured the vehicle through a commercial policy issued to Mimo Investment, LLC, whose resident agent was plaintiff's sister, Mariam Bazzi. Sentinel Insurance filed a third-party complaint against Hala and Mariam, seeking to rescind the policy on the basis that Hala and Mariam had procured the policy through fraud. The court, Lita M. Popke, J., entered a default judgment against Hala and Mariam rescinding the policy. Sentinel Insurance then moved for summary disposition of plaintiff's PIP benefits claim and the claims of the intervening medical providers, arguing that the policy was void *ab initio* because it had been rescinded for fraud, which precluded recovery under the policy. The court denied Sentinel Insurance's motion, concluding that plaintiff had a valid claim for PIP benefits under the innocent-third-party rule, which provides that an insurer may not rescind benefits for mandatory coverage under an insurance policy as to an innocent third party injured in an accident, even though the insured procured the policy through material misrepresentations in the application. Plaintiff appealed by leave granted. In a split decision, the Court of Appeals, SAWYER, P.J., and BOONSTRA, J. (BECKERING, J., dissenting), reversed the trial court and remanded for further proceedings. 315 Mich 763 (2016). The majority reasoned that the innocent-third-party rule did not survive the decision in *Titan Ins Co v Hyten*, 491 Mich 547 (2012)—which abrogated the judicially created easily-ascertainable-fraud rule—because there was no meaningful distinction between the two rules and because no statute prohibits an insurer from raising a fraud defense with respect to PIP benefits. The Supreme Court granted plaintiff and intervening plaintiffs Genex Physical Therapy, Inc., and Elite Chiropractic Center, PC's application for leave to appeal. 500 Mich 990 (2017).

In an opinion by Justice WILDER, joined by Chief Justice MARKMAN and Justices ZAHRA, BERNSTEIN, and CLEMENT, the Supreme Court *held*:

The Court's decision in *Titan* implicitly abrogated the innocent-third-party rule. An insurer may seek rescission of an automobile insurance policy on the basis of the common-law defense of fraud—even with regard to a third party seeking to recover statutorily mandated PIP benefits—because the no-fault act does not limit an insurer's ability to rescind a policy on that basis. However, an insurer is not entitled to automatic rescission of a policy with regard to a third party even though the policy was procured by the insured through fraud. Instead, a trial court must balance the equities between the insurance company and the third party to determine whether, in its discretion, the policy could be rescinded as between those parties. In this case, Sentinel Insurance could raise the defense of fraud to plaintiff's action for PIP benefits. The Court of Appeals erred when it concluded that Sentinel Insurance was automatically entitled to rescission of the contract with regard to plaintiff. The case was remanded to the trial court for it to balance the equities between the two parties to determine whether, in its discretion, the policy could be rescinded.

1. Automobile insurance contracts are governed by a combination of statutes and the common law related to contracts. Under MCL 500.3112, PIP benefits are payable to or for the benefit of an injured person or, in the case of an individual's death, to or for the benefit of the individual's dependents. Because PIP benefits are mandated by MCL 500.3101(1) of the no-fault act, issues regarding the award of those benefits are decided by construing the statute and the policy together as though the statute is part of the policy, and the rights and limitations of the policy coverage are governed by the statute. Conversely, the rights and limitations of a policy are entirely contractual and construed without reference to the statute if there is no applicable statute. Article 3, § 7 of the 1963 Michigan Constitution provides that common-law defenses remain in effect until they expire by their own limitations or are changed, amended, or repealed. Consequently, unless doing so is clearly prohibited by a statute, an insurer may continue to avail itself of any common-law defenses, including fraud in the procurement of the policy. The plain language of the no-fault act does not preclude or otherwise limit an insurer's ability to rescind a policy on the basis of the common-law defense of fraud, including as to a third party. Accordingly, Sentinel Insurance could raise the defense of fraud and seek rescission of the insurance policy as to plaintiff.

2. *Titan* abrogated the easily-ascertainable-fraud rule—which provided that insurance companies may not rescind a policy on the basis of fraud when the fraud was easily ascertainable—and overruled prior Court of Appeals decisions, including *State Farm Mut Auto Ins Co v Kurylowicz*, 67 Mich App 568 (1976). *Titan* implicitly abrogated the innocent-third-party rule as well; the two rules overlap because the easily-ascertainable-fraud rule only applies when a third-party claimant is involved. In its discussion of the no-fault act, *Titan* also rejected the underlying reasons for the innocent-third-party rule, reasoning that there was no basis in the no-fault act to support the proposition that public policy requires a private business to maintain a source of funds for the benefit of a third party with whom the business has no contractual relationship. The *Titan* Court's reasoning was not dependent on whether the coverage was optional or mandatory under the act because each benefit is predicated on a valid contract between the insured and the insurer. Moreover, public policy does not compel adoption of the innocent-third-party rule. Although an innocent third party might have a reasonable right to expect that other drivers have the minimum coverage required by the no-fault act (like PIP benefits), the innocent party does not have an absolute right by operation of law to hold an insurer liable for the fraud of the insured. Any implication in *Titan* that MCL 500.3101(1), like

the example of MCL 500.3009(1) used in *Titan*, limits the availability of rescission because both statutes mandate certain coverage—as opposed to the optional coverage at issue in *Titan*—was nonbinding dicta.

3. In general, fraud in the inducement to enter a contract renders the contract voidable at the option of the defrauded party. Accordingly, an insurance policy procured by fraud may be declared void *ab initio* at the option of the insurer, with the effect being that the contract is considered never to have existed. A claim to rescind a contract is equitable in nature, and the claim is therefore not strictly of right but instead granted as a remedy in the sound discretion of the trial court. A trial court must balance the equities to determine whether a party is entitled to the rescission the party seeks, and the remedy should not be granted when the result would be unjust or inequitable. In other words, the trial court must determine which party should assume the loss when both parties affected are equally innocent and blameless. In light of the fact that equity allows complete justice to be done in a case by adapting its judgments to the unique circumstances of each case, an insured's fraud in an application of insurance does not automatically allow the insurer to rescind the policy with respect to third parties. In this case, although the contract with Mimo Investment was void *ab initio* because of Mimo Investment's fraud in the application, the Court of Appeals erred by concluding that the contract was therefore automatically void *ab initio* between Sentinel Insurance and plaintiff. The case was remanded to the trial court to determine whether, in its discretion, the insurance policy could be rescinded between those parties.

Affirmed in part, reversed in part, and remanded to the trial court for further proceedings.

Justice MCCORMACK, joined by Justice VIVIANO, dissenting, disagreed with the majority's conclusion that *Titan* abrogated the innocent-third-party rule. *Titan* held that an insurer may use traditional legal and equitable remedies to defend against optional residual-liability insurance unless those remedies are limited by a statute. But unlike the optional residual-liability insurance at issue in *Titan*, PIP benefits are required and mandated by the no-fault act: MCL 500.3101(1) and (5), read together, require the insurer to provide PIP coverage in every policy unless that coverage may be excluded as provided in MCL 500.3017. And the no-fault act provides that all eligible claimants injured in an automobile accident are entitled to PIP benefits from their own insurer, from another insurer in order of priority, or from the Michigan Assigned Claims Plan. Because mandatory PIP coverage arises by statute, the rights and limitations on PIP coverage are governed by that statute; rescission is allowed when it is consonant with the act, and is not allowed when it is not. It is not allowed in this case because that remedy is not consonant with the statute's mandate that all eligible claimants are entitled to receive PIP benefits. The majority's reasoning—that the Legislature's failure specifically to exclude the defense of rescission indicates that it survives as an available defense—conflicts with the rules of statutory construction. *Titan* does not provide a doctrinal basis for the majority's decision either, because the innocent-third-party doctrine is distinct from the easily-ascertainable-fraud rule abrogated in *Titan*. The innocent-third-party doctrine is substantively sound: it survived *Titan*, and there is no principled basis to reject it now. The majority's decision to permit litigation of equitable defenses that conflict with the statute will interfere with the Legislature's expressed priorities: ensuring prompt and assured payment of coverage for eligible claimants and reducing litigation. Only lawyers stand to gain from the majority's remedy—balancing the equities in every case will prove costly and inefficient for insurers and accident

victims alike.  Justice MCCORMACK would have held that because the act mandates the payment of third-party PIP benefits and explicitly provides for cost-shifting and other remedies for insurers to invoke after payment has been made, the Legislature intended to abrogate those common-law remedies and equitable remedies that conflict with the act.  Accordingly, Justice MCCORMACK would have allowed Sentinel to avoid or reduce its obligations relative to the assigned claims insurer, Citizens Insurance Company, by raising defenses permitted by the act, but would not have allowed Sentinel to avoid its PIP obligations by seeking to rescind the policy based on fraud.

©2018 State of Michigan

# OPINION

Chief Justice:
Stephen J. Markman

Justices:
Brian K. Zahra
Bridget M. McCormack
David F. Viviano
Richard H. Bernstein
Kurtis T. Wilder
Elizabeth T. Clement

FILED  July 18, 2018

STATE OF MICHIGAN

SUPREME COURT

ALI BAZZI,

       Plaintiff-Appellant,

and

GENEX PHYSICAL THERAPY, INC., and
ELITE CHIROPRACTIC CENTER, PC,

       Intervening Plaintiffs-
       Appellants,

and

TRANSMEDIC, LLC,

       Intervening Plaintiff-Appellee,

v                                                                          No. 154442

SENTINEL INSURANCE COMPANY,

       Defendant/Third-Party
       Plaintiff-Appellee,

and

CITIZENS INSURANCE COMPANY,

       Defendant-Appellee,

and

HALA BAYDOUN BAZZI and
MARIAM BAZZI,

        Third-Party Defendants-
        Appellees.

---

BEFORE THE ENTIRE BENCH

WILDER, J.

Plaintiff, Ali Bazzi, was injured while driving a vehicle owned by his mother, third-party defendant Hala Baydoun Bazzi, and insured by defendant Sentinel Insurance Company (Sentinel).[1]   Plaintiff sued Sentinel for mandatory personal protection insurance (PIP) benefits under Michigan's no-fault act,[2] and Sentinel sought and obtained a default judgment rescinding the insurance policy on the basis of fraud.  This Court is now asked to decide whether the judicially created innocent-third-party rule, which precludes an insurer from rescinding an insurance policy procured through fraud when there is a claim involving an innocent third party, survived this Court's decision in *Titan Ins Co v Hyten*, 491 Mich 547; 817 NW2d 562 (2012), which abrogated the judicially created easily-ascertainable-fraud rule.  In answer, we hold that *Titan* abrogated the innocent-third-party rule but that the Court of Appeals erred when it concluded that Sentinel was automatically entitled to rescission in this instance.  Accordingly, we affirm in part, reverse in part, and remand to the trial court to consider whether, in its discretion, rescission is an available remedy.

---

[1] Defendant Citizens Insurance Company is not involved in this appeal.

[2] MCL 500.3101 *et seq*.

2

## I. FACTS AND PROCEEDINGS

Plaintiff sued for PIP benefits after he was injured while driving a vehicle owned by his mother, Hala Bazzi. The vehicle had been leased by LaFontaine Honda to Hala Bazzi for personal and family use. Although Hala Bazzi leased the vehicle in her name, personally, she sought and procured from Sentinel a commercial automobile policy for no-fault coverage, which listed Mimo Investment, LLC, as the insured. Plaintiff's sister, third-party defendant Mariam Bazzi, is the resident agent of Mimo Investment.[3]

Sentinel claimed that the insurance policy was procured through fraud by Hala and Mariam Bazzi because Mimo Investment was a shell company, the vehicle was not being commercially used by Mimo Investment, and no one had disclosed to Sentinel that plaintiff would be a regular driver of the vehicle. Sentinel filed a third-party complaint against Hala and Mariam Bazzi and obtained a default judgment rescinding the policy.[4]

Sentinel then moved for summary disposition of plaintiff's claim, arguing that rescission of the policy made it void *ab initio* and precluded recovery under the policy. The trial court denied the motion on the basis of the innocent-third-party rule, which prevents an insurer from rescinding an insurance policy on the basis of material misrepresentations in the application for insurance as to a claim made by a third party who is innocent of the fraud. After the Court of Appeals denied Sentinel's interlocutory application for leave to appeal, this Court remanded the case to the Court of Appeals for consideration as on leave granted. *Bazzi v Sentinel Ins Co*, 497 Mich 886 (2014).

---

[3] Hala and Mariam Bazzi are not involved in this appeal.

[4] Sentinel also sought monetary damages resulting from the misrepresentation and fraud.

3

On remand, the Court of Appeals issued a split, published decision reversing the trial court and remanding for further proceedings. *Bazzi v Sentinel Ins Co*, 315 Mich App 763, 780-782; 891 NW2d 13 (2016). The majority held that the innocent-third-party rule did not survive this Court's decision in *Titan* because there was no meaningful distinction between the easily-ascertainable-fraud rule and the innocent-third-party rule and because no statute prohibits an insurer from raising a fraud defense with respect to PIP benefits. *Id*. at 772-773, 778-782.

Plaintiff and intervening plaintiffs Genex Physical Therapy, Inc., and Elite Chiropractic Center, PC,[5] filed an application for leave to appeal in this Court, which was granted. *Bazzi v Sentinel Ins Co*, 500 Mich 990 (2017). For the reasons discussed in this opinion, we affirm the Court of Appeals' holding that *Titan* abrogated the innocent-third-party rule and reverse the portion of the Court of Appeals' opinion holding that Sentinel is automatically entitled to rescission. We remand to the trial court to determine whether rescission is available as an equitable remedy as between Sentinel and plaintiff.

## II. STANDARD OF REVIEW

This Court reviews de novo a trial court's decision on a motion for summary disposition. *DeFrain v State Farm Mut Auto Ins Co*, 491 Mich 359, 366; 817 NW2d 504 (2012). A motion for summary disposition under MCR 2.116(C)(10) shall be granted if

---

[5] Intervening plaintiffs Genex Physical Therapy, Elite Chiropractic Center, and Transmedic, LLC, intervened in the action to recover payment for the medical services they individually provided to plaintiff for his injuries. Transmedic is not involved in this appeal, and references in this opinion to "intervening plaintiffs" are to Genex Physical Therapy and Elite Chiropractic Center.

4

there is no genuine issue regarding any material fact and the movant is entitled to judgment as a matter of law. *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999). This Court also reviews de novo questions of statutory interpretation and the proper interpretation of a contract. *Titan*, 491 Mich at 553.

## III. ANALYSIS

### A. THE INNOCENT-THIRD-PARTY RULE DOES NOT SURVIVE *TITAN*

As a general rule, Michigan's no-fault insurance system is "a comprehensive scheme of compensation designed to provide sure and speedy recovery of certain economic losses resulting from motor vehicle accidents." *Belcher v Aetna Cas & Surety Co*, 409 Mich 231, 240; 293 NW2d 594 (1980). The Insurance Code has various requirements detailing the benefits that Michigan automobile insurance policies must provide, including PIP benefits, which "are payable to or for the benefit of an injured person or, in the case of his death, to or for the benefit of his dependents." MCL 500.3112. Because "PIP benefits are mandated by statute under the no-fault act, . . . the statute is the 'rule book' for deciding the issues involved in questions regarding awarding those benefits." *Rohlman v Hawkeye-Security Ins Co*, 442 Mich 520, 524-25; 502 NW2d 310 (1993).

Consequently, automobile insurance contracts are governed by a combination of statutory provisions and the common law of contracts. Insurance policies are contracts " 'subject to the same contract construction principles that apply to any other species of contract.' " *Titan*, 491 Mich at 554, quoting *Rory v Continental Ins Co*, 473 Mich 457, 461; 703 NW2d 23 (2005). When a provision in an insurance policy is mandated by a statute, the policy and the statute must be construed together as though the statute were

5

part of the policy, and "the rights and limitations of the coverage are governed by that statute." *Titan*, 491 Mich at 554 (quotation marks and citation omitted). In the absence of any applicable statute, however, "the rights and limitations of the coverage are *entirely contractual* and construed without reference to the statute." *Id*. (emphasis added).

It is well established that common-law defenses "shall remain in force and effect until they expire by their own limitations, or are changed, amended or repealed." Const 1963, art 3, § 7. Legislative amendment of the common law has not been lightly presumed by Michigan appellate courts. *Wold Architects & Engineers v Strat*, 474 Mich 223, 233; 713 NW2d 750 (2006), citing *Marquis v Hartford Accident & Indemnity (After Remand)*, 444 Mich 638, 652 n 17; 513 NW2d 799 (1994). The issue of whether a statute preempts, changes, or amends the common law is one of legislative intent. *Wold Architects & Engineers*, 474 Mich at 233. In ascertaining legislative intent, our first step is to look at the words of the statute. *Id*. Accordingly, unless clearly prohibited by statute, an insurer may continue to avail itself of any common-law defenses, such as fraud in the procurement of the policy. *Titan*, 491 Mich at 554-555.

MCL 500.3112 states, in pertinent part, that "[PIP] benefits are payable to or for the benefit of an injured person or, in the case of his death, to or for the benefit of his dependents." There is no question that PIP benefits are mandated by the statute and that the insurance policy must therefore be read together with the no-fault act; instead, the question is whether the statute prohibits an insurer from availing itself of the defense of fraud.

When the Legislature intends to limit the common-law remedies available to an insurer for misrepresentation or fraud, that intent is clearly reflected in the language

6

employed in the statute. For example, MCL 500.3220—part of the no-fault act—"limits the ability of a licensed insurer to 'cancel' automobile coverage after a policy has been in effect for at least 55 days." *Titan*, 491 Mich at 557-558, citing MCL 500.3220. Additionally, MCL 257.520(f)(1) of the financial responsibility act, MCL 257.501 *et seq.*, explicitly precludes rescission based on fraud or misrepresentations. See MCL 257.520(f)(1) ("The liability of the insurance carrier with respect to the insurance required by this chapter shall become absolute whenever injury or damage covered by said motor vehicle liability policy occurs . . . [and] no fraud, misrepresentation, assumption of liability or other act of the insured in obtaining or retaining such policy . . . shall constitute a defense as against such judgment creditor."). In this case, however, the plain language of the no-fault act does not preclude or otherwise limit an insurer's ability to rescind a policy on the basis of fraud.[6] Therefore, Sentinel may raise that defense and seek rescission of the no-fault insurance policy.

In the past, Michigan courts have held that the "right to rescind ceases to exist once there is a claim involving an innocent third party" because "[p]ublic policy requires that an insurer be estopped from asserting rescission when a third party has been injured." *Katinsky v Auto Club Ins Ass'n*, 201 Mich App 167, 170-171; 505 NW2d 895 (1993), citing *Darnell v Auto-Owners Ins Co*, 142 Mich App 1, 9; 369 NW2d 243 (1985), and *Ohio Farmers Ins Co v Mich Mut Ins Co*, 179 Mich App 355, 364-365; 445 NW2d 228 (1989); see also *Morgan v Cincinnati Ins Co*, 411 Mich 267, 273, 277; 307 NW2d 53

---

[6] See MCL 500.3101 *et seq.*; MCL 500.3105 (insurer liability); MCL 500.3107 (allowable expenses); *Titan*, 491 Mich at 566-568.

7

(1981) (holding that the intentional burning of a home by one spouse would not bar the innocent spouse's recovery under a statutory fire insurance policy because the policy named both spouses as "the insured").

A " 'public policy' rationale does not compel the adoption" of such a rule, however, and this Court implicitly abrogated the so-called "innocent-third-party" rule in *Titan*, 491 Mich at 565, 570, 573. In that case, the defendant had her driver's license suspended in January 2007 but expected that it would be restored at a hearing held on August 24, 2007. *Id*. at 551. In the meantime, the defendant sought car insurance from the plaintiff, Titan Insurance Company. *Id*. at 551-552. On the defendant's application, which she signed on August 22, 2007, and postdated August 24, 2007, she stated that her license was not suspended; the defendant's license, however, was not restored until September 20, 2007. *Id*. In February 2008, she crashed the insured vehicle into a vehicle driven by Howard and Martha Holmes. *Id*. at 552.

While investigating the accident, Titan discovered the defendant's misrepresentation. *Id*. Titan sought a declaration that if the Holmes family brought an action against the defendant and prevailed, Titan was not obligated to indemnify the defendant above the minimum liability coverage limits required by the financial responsibility act. *Id*.

The trial court granted summary disposition in favor of the defendant, reasoning that Titan could have easily ascertained whether the defendant's license was valid. *Id*. at 553. The Court of Appeals affirmed,[7] relying on *State Farm Mut Auto Ins Co v*

---

[7] *Titan Ins Co v Hyten*, 291 Mich App 445, 463-464; 805 NW2d 503 (2011).

*Kurylowicz*, 67 Mich App 568; 242 NW2d 530 (1976). The rule established in *Kurylowicz* prohibited insurers from asserting the defense of fraud once an insurable event occurred and there was an innocent, injured third party if the fraud perpetrated by the insured was easily ascertainable by investigation. *Titan*, 491 Mich at 563-564.

This Court held that "an insurer is not precluded from availing itself of traditional legal and equitable remedies to avoid liability under an insurance policy on the ground of fraud in the application for insurance, even when the fraud was easily ascertainable and the claimant is a third party." *Id*. at 571. Thus, *Titan* abrogated the judicially created easily-ascertainable-fraud and innocent-third-party rules, and it overruled *Kurylowicz* and its progeny.

We are not persuaded by the argument of plaintiff, intervening plaintiffs, and the Court of Appeals dissent that *Titan* only addressed the easily-ascertainable-fraud rule, and left undisturbed the innocent-third-party rule. See *Bazzi*, 315 Mich App at 790 (BECKERING, J., dissenting). *Titan* recognized that these rules overlap because "the 'easily ascertainable' rule . . . only applies when a third-party claimant is involved." *Titan*, 491 Mich at 563. The *Titan* Court explained that an insurance carrier could resort to traditional legal and equitable remedies, including rescission, even when the fraud was "easily ascertainable *and* the claimant is a third party." *Id*. at 572, 573 (emphasis added). Because these two factors are insufficient to preclude rescission *even when combined*, each factor *on its own* is insufficient to preclude rescission.

Moreover, in *Titan*, this Court rejected the underlying reasons for the innocent-third-party rule in contemplation of the no-fault act:

9

[I]t is contended that the "easily ascertainable" rule is required for the protection of third parties. However, there is simply no basis in the law to support the proposition that public policy requires a private business in these circumstances to maintain a source of funds for the benefit of a third party with whom it has no contractual relationship. While perhaps authority exists in the Legislature to enact such a law, see, e.g., MCL 500.3172 (pertaining to the Michigan Assigned Claims Facility), this authority has not been exercised by the Legislature in this instance. The no-fault act seeks to protect third parties in a variety of ways, including through tort actions, but it states nothing about altering the common law that enables insurers to obtain traditional forms of relief when they have been the victims of fraud. . . . Absent insurance, the operator of the motor vehicle is personally liable for tort liability. By requiring an insurer to indemnify an insured despite fraud in obtaining an insurance policy, . . . the insured [is relieved] of what would otherwise be the insured's personal obligation in the face of his or her own misconduct. As between the fraudulent insured and the insurer, there can be no question that the former should bear the burden of his or her fraud. [*Id.* at 568-569.]

This rationale applies in full force to the innocent-third-party rule, which, like the easily-ascertainable-fraud rule, also precludes an insurer from raising a fraud defense to deny coverage under an insurance policy procured by fraud. Imposition of the rule would require Sentinel to indemnify Mimo Investment for the benefit of plaintiff despite the fraud that was committed when obtaining the insurance policy, relieving Mimo Investment of what would otherwise be its obligation in the face of its own agent's misconduct.

Plaintiff, intervening plaintiffs, and the Court of Appeals dissent, further contend that mandatory liability minimums—including PIP coverage, which is mandatory under MCL 500.3101(1)—must be paid by an insurer under a policy despite any fraud in the

10

acquisition of that policy.  In support of this position, they cite MCL 500.3009(1),[8] which provides the policy coverage minimums for all motor vehicle liability insurance policies, and *Titan*, 491 Mich at 572, in which this Court stated:

> Should Titan prevail on its assertion of actionable fraud, it may avail itself of a traditional legal or equitable remedy to avoid liability under the insurance policy, notwithstanding that the fraud may have been easily ascertainable.  *However, as discussed earlier in this opinion, the remedies available to Titan may be limited by statute. . . .*[17]

---

[17] For example, MCL 500.3009(1) provides the policy coverage minimums for all motor vehicle liability insurance policies.

---

[Emphasis added.]

---

[8] MCL 500.3009(1) states:

> An automobile liability or motor vehicle liability policy insuring against loss resulting from liability imposed by law for property damage, bodily injury, or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle shall not be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless the liability coverage is subject to all of the following limits:
>
> (a) A limit, exclusive of interest and costs, of not less than $20,000.00 because of bodily injury to or death of 1 person in any 1 accident.
>
> (b) Subject to the limit for 1 person in subdivision (a), a limit of not less than $40,000.00 because of bodily injury to or death of 2 or more persons in any 1 accident.
>
> (c) A limit of not less than $10,000.00 because of injury to or destruction of property of others in any accident.

11

The same argument was made in *State Farm Mut Auto Ins Co v Mich Muni Risk Mgt Auth (On Remand)*, 317 Mich App 97, 105; 892 NW2d 451 (2016) (MURPHY, J., concurring) (reasoning that "[b]y observing that MCL 500.3009(1) limits available remedies for actionable fraud, the Supreme Court effectively telegraphed its view that an insurer would be liable under a policy with respect to liability coverage required by MCL 500.3009(1) in connection to an innocent third party injured by a negligent driver who had fraudulently procured the policy").

We reject the premise that there is a controlling distinction between mandatory coverage, i.e., statutorily mandated PIP benefits, and optional coverage. Whether statutory benefits or optional benefits are at issue, each is predicated on the existence of a valid contract between the insured and insurer. Moreover, our reasoning in *Titan* was not dependent on whether the coverage at issue was mandatory or optional. Rather, we recognized that common-law defenses are available when there are contractual insurance policies but limited when a statute prohibits the defense. *Titan*, 491 Mich at 558, 572. Although PIP benefits are mandated by statute, the no-fault act neither prohibits an insurer from invoking the common-law defense of fraud nor limits or narrows the remedy of rescission. Additionally, because *Titan* considered only optional benefits, there was no reason for this Court to opine on any purported statutory limitations on common-law defenses for mandatory coverage. As such, any implication derived from *Titan*'s footnote 17 and accompanying text that MCL 500.3101(1) somehow limited the availability of rescission—see *Titan*, 491 Mich at 572 & n 17—was nonbinding dicta. *Haksluoto v Mt Clemens Regional Med Ctr*, 500 Mich 304, 313 n 3; 901 NW2d 577 (2017) (" 'Obiter dicta are not binding precedent.' ") (citation omitted). We acknowledge

12

that several lower court opinions have questioned whether permitting rescission of a policy would be incompatible with the compulsory nature of the no-fault act, particularly after a third party has sustained injury. See, e.g., *Cunningham v Citizens Ins Co of America*, 133 Mich App 471, 481, 484-489; 350 NW2d 283 (1984) (BRENNAN, J., dissenting) (concluding that rescission *ab initio* was not an available remedy to insurers under this state's compulsory insurance scheme); *Kurylowicz*, 67 Mich App 579 (holding that a policy of no-fault insurance becomes absolute once an injury arises), overruled by *Titan*, 491 Mich at 551. However, although an innocent third party might have a reasonable right to expect that other drivers carry the minimum insurance required under the no-fault act, that expectation does not, by operation of law, grant an innocent third party an absolute right to hold an insurer liable for the fraud of the insured. In other words, an insurer has a reasonable right to expect honesty in the application for insurance,[9] and there is nothing in the no-fault act that indicates that the reasonable expectations of an innocent third party surmount the reasonable expectations of the insurer.

---

[9] *Jacobs v Queen Ins Co*, 183 Mich 512, 520; 150 NW 147 (1914) (noting that "a contract of insurance is one in which the utmost good faith is required of the insured") (quotation marks and citation omitted). See also Barry Zalma, LexisNexis Legal Newsroom, *The Equitable Remedy of Rescission: A Tool to Defeat Fraud*, <https://www.lexisnexis.com/legalnewsroom/insurance/b/insurancelaw/archive/2015/04/21/the-equitable-remedy-of-rescission-a-tool-to-defeat-fraud.aspx> (posted April 21, 2015) (accessed June 11, 2018) (stating that "[i]nsurance contracts, unlike common run-of-the-mill commercial contracts, are considered to be contracts of *utmost good faith*" and that "[e]ach party to the contract of insurance is expected to treat the other fairly in the acquisition and performance of the contract").

Accordingly, we hold that *Titan* abrogated the innocent-third-party rule and that Sentinel is therefore not precluded from raising a defense of fraud.

## B. RESCISSION IS AN EQUITABLE REMEDY, NOT AN ABSOLUTE RIGHT

While we agree with the Court of Appeals majority that *Titan* abrogated the innocent-third-party rule, we do not agree that Sentinel was categorically entitled to rescission.

Generally, "[f]raud in the inducement to enter a contract renders the contract *voidable* at the option of the defrauded party . . . ." 5A Michigan Civil Jurisprudence, Contracts, § 44, p 215 (emphasis added), citing *Tocco v Tocco*, 409 F Supp 2d 816 (ED Mich, 2005), *Star Ins Co v United Commercial Ins Agency, Inc*, 392 F Supp 2d 927 (ED Mich, 2005) (applying Michigan law), *Rooyakker & Sitz, PLLC v Plante & Moran, PLLC*, 276 Mich App 146; 742 NW2d 409 (2007), *Custom Data Solutions, Inc v Preferred Capital, Inc*, 274 Mich App 239; 733 NW2d 102 (2006), *Samuel D Begola Servs, Inc v Wild Bros*, 210 Mich App 636; 534 NW2d 217 (1995), and *Whitcraft v Wolfe*, 148 Mich App 40; 384 NW2d 400 (1985). For that reason, an insurance policy procured by fraud may be declared void *ab initio* at the option of the insurer. *Darnell*, 142 Mich App at 9 (stating that "[w]here a policy of insurance is procured through the insured's intentional misrepresentation of a material fact in the application for insurance, and the person seeking to collect the no-fault benefits is the same person who procured the policy of insurance through fraud, an insurer may rescind an insurance policy and declare it void *ab initio*"), citing *Cunningham*, 133 Mich App 471, and *United Security Ins Co v Comm'r of Ins*, 133 Mich App 38; 348 NW2d 34 (1984). In effect, the

insurance policy is considered never to have existed. *United Security Ins Co*, 133 Mich App at 42 (" 'When a policy is cancelled, it is terminated as of the cancellation date and is effective up to such date; however, when a policy is rescinded, it is considered void ab initio and is considered never to have existed.' "), quoting 8B Appleman, Insurance Law and Practice, § 5011, p 403. Additionally, "[u]nless rescinded, a voidable contract imposes on the parties the same obligations as if it were not voidable." 1 Williston, Contracts (4th ed), § 1:20, p 76.

Rescission abrogates a contract and restores the parties to the relative positions that they would have occupied if the contract had never been made. *Wall v Zynda*, 283 Mich 260, 264-265; 278 NW 66 (1938).[10] Because a claim to rescind a transaction is equitable in nature, it "is not strictly a matter of right" but is granted only in "the sound discretion of the court." *Amster v Stratton*, 259 Mich 683, 686; 244 NW 201 (1932). See *id*. (stating that "[e]quitable relief . . . is not strictly a matter of right, but rather a remedy, the granting of which rests in the sound discretion of the court"); *Windisch v Mortgage Security Corp of America*, 254 Mich 492, 495; 236 NW 880 (1931) (stating that one who

---

[10] Additionally,

> [r]escission abrogates a contract completely. All former contract rights are annulled, and it is as if no contract had been made. Thus, to rescind a contract is not merely to terminate it, but to undo it from the beginning, and the effect of rescission is not merely to release the parties from further obligation to each other in respect to the subject of the contract, but to annul the contract and restore the parties to the relative positions which they would have occupied if no such contract had ever been made. Rescission involves a restoration of the status quo. [5A Michigan Civil Jurisprudence, Contracts, § 215, pp 439-440 (citations omitted).]

seeks equity must "do equity") (quotation marks and citation omitted); *Lenawee Co Bd of Health v Messerly*, 417 Mich 17, 31; 331 NW2d 203 (1982) (stating that rescission is "an equitable remedy which is granted only in the sound discretion of the court"), citing *Harris v Axline*, 323 Mich 585; 36 NW2d 154 (1949), and *Hathaway v Hudson*, 256 Mich 694; 239 NW 859 (1932). See also *Browne v Briggs Commercial & Dev Co*, 271 Mich 191, 194; 259 NW 886 (1935) (stating that "[t]he equitable remedy of rescission is one of grace"); 12A CJS, Cancellation of Instruments, § 11, p 507 (stating that "[t]he fact that the rescission of a contract is an available remedy does not lead to the conclusion that it is required").[11]

When a plaintiff is seeking rescission, "the trial court must balance the equities to determine whether the plaintiff is entitled to the relief he or she seeks." *Johnson v QFD, Inc*, 292 Mich App 359, 370 n 3; 807 NW2d 719 (2011). Accordingly, courts are not required to grant rescission in all cases. For example, "rescission should not be granted in cases where the result thus obtained would be unjust or inequitable," *Amster*, 259 Mich at 686, or "where the circumstances of the challenged transaction make rescission

---

[11] Unlike an action for rescission, a suit for damages is an action at law, see *King v Gen Motors Corp*, 136 Mich App 301, 308; 356 NW2d 626 (1984), and actions at law are founded on a party's absolute right, rather than on an appeal left to the discretion of the court, see *Hathaway*, 256 Mich at 702. A plaintiff, however, is not required to elect between the remedies of rescission and damages. *Jefferson Park Land Co v Wayne Circuit Judge*, 234 Mich 341, 345-346; 207 NW 903 (1926). Furthermore, when a contract is not rescinded, the defrauded insurer may still recover damages on the basis of fraud. See *Hedler v Manning*, 252 Mich 195, 197; 233 NW 223 (1930) ("A bill for rescission with alternative prayer for damages for fraud if rescission be impracticable is well laid."); *Glover v Radford*, 120 Mich 542, 544; 79 NW 803 (1899) ("If there was fraud, and he did not succeed in rescinding the contract, he certainly ought to have the right to recover damages for the injury he had suffered, if any.").

16

infeasible," CJS, § 11, p 507. Moreover, when two equally innocent parties are affected, the court is "required, in the exercise of [its] equitable powers, to determine which blameless party should assume the loss . . . ." *Lenawee*, 417 Mich at 31. "[W]here one of two innocent parties must suffer by the wrongful act . . . of another, that one must suffer the loss through whose act or neglect such third party was enabled to commit the wrong." *Zucker v Karpeles*, 88 Mich 413, 430; 50 NW 373 (1891). "The doctrine is an equitable one, and extends no further than is necessary to protect the innocent party in whose favor it is invoked." *Id*.

In this instance, rescission does not function by automatic operation of the law. Just as the intervening interest of an innocent third party does not altogether bar rescission as an equitable remedy, neither does fraud in the application for insurance imbue an insurer with an absolute right to rescission of the policy with respect to third parties. Equitable remedies are adaptive to the circumstances of each case, and an absolute approach would unduly hamper and constrain the proper functioning of such remedies. This Court has recognized that "[e]quity jurisprudence molds its decrees to do justice amid all the vicissitudes and intricacies of life" and that "[e]quity allows complete justice to be done in a case by adapting its judgments to the special circumstances of the case." *Tkachik v Mandeville*, 487 Mich 38, 45-46; 790 NW2d 260 (2010) (quotation marks omitted), citing *Spoon-Shacket Co, Inc v Oakland Co*, 356 Mich 151, 163; 97 NW2d 25, and 27A Am Jur 2d, Equity, § 2, pp 520-521; see also *Lenawee*, 417 Mich at 29 (adopting a case-by-case approach to rescission when a "mistaken belief relates to a basic assumption of the parties upon which the contract is made, and which materially affects the agreed performances of the parties"), and Am Jur 2d, § 2, pp 548-549.

17

Accordingly, although the policy between Sentinel and the insured, Mimo Investment is void *ab inito* due to the fraudulent manner in which it was acquired, the trial court must now determine whether, in its discretion, rescission of the insurance policy is available as between Sentinel and plaintiff.[12]  Therefore, we remand this matter to the trial court to exercise its discretion.  *Lenawee*, 417 Mich at 31.

## IV.  CONCLUSION

We affirm the Court of Appeals' holding that *Titan* abrogated the innocent-third-party rule and reverse the portion of the Court of Appeals' opinion that held Sentinel was automatically entitled to rescission by operation of law.  We remand to the trial court to determine whether rescission is available as an equitable remedy as between Sentinel and plaintiff.

Kurtis T. Wilder
Stephen J. Markman
Brian K. Zahra
Richard H. Bernstein
Elizabeth T. Clement

---

[12] If the insurer could not rescind as to the third parties, but could rescind as to any claims by the fraudulent insured, then the policy would not be fully rescinded; rather it would be considered reformed.  1 Dobbs, Law of Remedies (2d ed), § 4.3(7), pp 617-618.

18

S T A T E   O F   M I C H I G A N

SUPREME COURT

ALI BAZZI,

        Plaintiff-Appellant,

and

GENEX PHYSICAL THERAPY, INC., and
ELITE CHIROPRACTIC CENTER, PC,

        Intervening Plaintiffs-
        Appellants,

and

TRANSMEDIC, LLC,

        Intervening Plaintiff-Appellee,

v                               No. 154442

SENTINEL INSURANCE COMPANY,

        Defendant/Third-Party
        Plaintiff-Appellee,

and

CITIZENS INSURANCE COMPANY,

        Defendant-Appellee,

and

HALA BAYDOUN BAZZI and
MARIAM BAZZI,

        Third-Party Defendants-
        Appellees.

---

MCCORMACK, J. (*dissenting*).

In *Titan Ins Co v Hyten*, 491 Mich 547, 550-551; 817 NW2d 562 (2012), we held that an insurer may avail itself of traditional legal and equitable remedies to defend against optional residual-liability insurance unless those remedies are limited by statute.

We cited MCL 500.3009(1)—the statutory provision mandating minimum residual-liability coverage—as an example of such a statutory limit. *Id*. at 572 n 17. Because mandatory coverage was not at issue in *Titan*, we construed the policy as an ordinary contract. And provisions in ordinary contracts are enforceable unless contrary to law or public policy. Therefore, we looked for any law or public policy that expressly forbade rescission of an optional insurance contract and found none. This case is almost a perfect mirror-image of *Titan*—involving statutorily mandated personal protection insurance (PIP) benefits, in contrast to *Titan*'s optional contractual residual-liability insurance—yet the majority applies *Titan*'s optional-coverage standard.

I respectfully dissent. PIP benefits arise out of the no-fault act (alternatively, the Act), MCL 500.3101 *et seq*., and we must construe a no-fault policy and the Act together as though the statutes were a part of the contract. *Rohlman v Hawkeye-Security Ins Co*, 442 Mich 520, 524-525; 502 NW2d 310 (1993). I would hold that MCL 500.3101 limits rescission of PIP benefits, just as MCL 500.3009(1) limits rescission of residual-liability coverage. Rescission is available when consistent with the Act and not available when inconsistent with the Act.

The Legislature has created a comprehensive statutory scheme that guarantees PIP benefits will be paid to all eligible claimants—it's just a question of who must pay them. Innocent third parties are always eligible claimants. See MCL 500.3113 (listing those persons who are not entitled to PIP benefits). And because the insurer bears the cost of PIP coverage for innocent third parties whether they rescind the policy or not, the majority's decision—requiring equitable balancing in each case—has built a bridge to nowhere. When benefits are mandated, an insurer has only two options: pay now, or

2

reimburse later. Requiring costly litigation to determine in every case who will be the payor and who will be the reimbursor is an exercise in futility and is contrary to the Act's purpose—to ensure prompt coverage and to reduce litigation. Instead, today's decision will delay coverage and increase litigation—a coup for lawyers at their clients' expense. I would hold that Sentinel may not independently seek to rescind the PIP coverage mandated by the no-fault act but that Sentinel may seek to avoid or reduce its obligations relative to the assigned claims insurer, Citizens Insurance Company, by raising defenses permitted by the Act.[1]

## I. CONTRACTUAL VERSUS STATUTORY COVERAGE

### A. *TITAN* WAS NOT A NO-FAULT CASE

*Titan* does not answer the question asked here because it analyzed coverage that arose solely by contract. Contrary to the majority's assertion, *Titan*'s holding rested *entirely* on the premise that there is a controlling difference between benefits required by statute and optional benefits in excess of any statutory requirement. We stated:

> [W]hen a provision in an insurance policy is mandated by statute, the rights and limitations of the coverage are governed by that statute. On the other hand, when a provision in an insurance policy is not mandated by statute, the rights and limitations of the coverage are entirely contractual and construed without reference to the statute. [*Titan*, 491 Mich at 554 (citation omitted).]

---

[1] See, e.g., MCL 500.3172(3)(f) ("After hearing the action, the circuit court shall determine the insurer or insurers, if any, obligated to provide the applicable personal protection insurance benefits and the equitable distribution, if any, among the insurers obligated, and shall order reimbursement to the Michigan automobile insurance placement facility from the insurer or insurers to the extent of the responsibility as determined by the court.").

This wasn't a new idea: in *Rohlman*, 442 Mich at 524-525, we stated that "the insurance policy itself, which is the contract between the insurer and the insured, controls the interpretation of its own provisions providing benefits not required by statute." The dispute in *Titan* concerned only the latter category—benefits not required by statute.

*Titan* was simply not a no-fault case. It was a private contract dispute, so contract remedies applied as long as they were not statutorily prohibited. We therefore searched (in vain) for any express statutory restriction on the insurer's fraud defense, because the disputed benefits arose purely by contract and a contract must be enforced as written unless contrary to law or public policy. See *Rory v Continental Ins Co*, 473 Mich 457, 469; 703 NW2d 23 (2005). Finding no such restriction, we concluded in *Titan* that the insurer could avail itself of equitable remedies to avoid the purely contractual coverage.

This was not a novel approach to interpreting statutes or contracts. It was not statutory interpretation at all, because there was no statutory coverage in dispute. And it was not a novel approach to interpreting a contract: we apply contracts as written as long as the contract's terms are legal. "[U]nambiguous contracts, including insurance policies, are to be enforced as written unless a contractual provision violates law or public policy." *Rory*, 473 Mich at 491. Contract remedies like rescission play by those same rules: they cannot be exercised in a manner contrary to law or public policy. "It is a principle of general application that courts, and especially courts of equity, may appropriately withhold their aid where the plaintiff is using the right asserted contrary to the public interest." *Morton Salt Co v G S Suppiger Co*, 314 US 488, 492; 62 S Ct 402; 86 L Ed 363 (1942), abrogated on other grounds by *Illinois Tool Works Inc v Indep Ink, Inc*, 547 US 28; 126 S Ct 1281; 164 L Ed 2d 26 (2006).

## B. THE STATUTE GOVERNS MANDATORY COVERAGE

When benefits *are* required by statute, however, we must look to the statute for the available remedies. Also not new. For just one example, see what we said in *Titan*: "when a provision in an insurance policy is mandated by statute, the rights and limitations of the coverage are governed by that statute." *Titan*, 491 Mich at 554. *Titan* simply adhered to our traditional approach. "It is a familiar and fundamental rule of construction of a private automobile insurance policy that the court's first duty is to determine, from the language used, the apparent intention of the contracting parties . . . . The language of a statute, on the other hand, is required to be construed by assigning to the words used their primary and generally understood meaning consistent with the apparent intention of the Legislature in enacting the law." *Royal Globe Ins Cos v Frankenmuth Mut Ins Co*, 419 Mich 565, 573; 357 NW2d 652 (1984) (citations omitted).

PIP benefits are required by statute. "PIP benefits are mandated by statute under the no-fault act, and, therefore, the statute is the 'rule book' for deciding the issues involved in questions regarding awarding those benefits." *Rohlman*, 442 Mich at 524-525 (citations omitted). And unlike the residual-liability coverage at issue in *Titan*—that is, optional coverage in excess of the mandatory minimum coverage that is required by the Act—there is no such thing as *optional* PIP coverage. There is no mandatory/optional distinction because PIP coverage is self-limiting—it covers only medical expenses and lost income.[2] PIP coverage is mandatory in every insurance policy

---

[2] An insurer's liability for PIP benefits is limited, however, by membership in the Michigan Catastrophic Claims Association (MCCA). All insurers who write automobile insurance policies must be members of the MCCA, which provides "indemnification for

5

issued in Michigan, and the statute sets the floor and the ceiling for the coverage.[3]

In this way, PIP benefits operate just like the minimum residual-liability coverage we identified in *Titan* as a statutory limit against rescission. That section, MCL 500.3009(1), states:

> An automobile liability or motor vehicle liability policy insuring against loss resulting from liability imposed by law for property damage, bodily injury, or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle shall not be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless the liability coverage is subject to all of the following limits:
>
> (a) A limit, exclusive of interest and costs, of not less than $20,000.00 because of bodily injury to or death of 1 person in any 1 accident.
>
> (b) Subject to the limit for 1 person in subdivision (a), a limit of not less than $40,000.00 because of bodily injury to or death of 2 or more persons in any 1 accident.
>
> (c) A limit of not less than $10,000.00 because of injury to or destruction of property of others in any accident.

---

100% of the amount of ultimate loss sustained under personal protection insurance coverages" that exceed a certain dollar amount calculated biennially (at present, somewhere in the neighborhood of $500,000). MCL 500.3104(2); see also MCL 500.3104(3).

[3] The coordination-of-benefits provision, MCL 500.3109a, proves again the point: an insurer who provides PIP benefits "may offer, at appropriately reduced premium rates, deductibles and exclusions reasonably related to other health and accident coverage on the insured." But any exclusion or deductible cannot change the absolute level of PIP coverage mandated by statute—coordination permits cost-sharing between insurers, but a no-fault insurer is released from liability only for medical expenses that "the insured's health care insurer is required, under its contract, to pay for or provide." *Tousignant v Allstate Ins Co*, 444 Mich 301, 303; 506 NW2d 844 (1993).

The statute requires that every policy provide this 20/40/10 minimum coverage.

PIP coverage is similar. MCL 500.3101(1) requires all owners and operators to maintain security for some benefits, including "personal protection insurance," or PIP. MCL 500.3101(1) ("The owner or registrant of a motor vehicle required to be registered in this state shall maintain security for payment of benefits under personal protection insurance, property protection insurance, and residual liability insurance."). The details of the mandated PIP coverage are spelled out in the sections that follow. MCL 500.3101(1) *et seq*. Read alone, this provision seems to differ from MCL 500.3009(1) in that the owner or operator is obligated to obtain the proper coverage.

But there's more. The insurer is also obligated to provide this coverage when Subsection (1) is read together with Subsection (5). MCL 500.3101(5) states, "An insurer that issues a policy that provides the security required under subsection (1) may exclude coverage under the policy as provided in section 3017." By expressly permitting insurers to exclude coverage only under enumerated circumstances (not relevant here), in all other circumstances an insurer may not issue a policy without PIP coverage, property protection insurance, and residual-liability insurance. See *Hoerstman Gen Contracting, Inc v Hahn*, 474 Mich 66, 74; 711 NW2d 340 (2006) (stating that enumeration of exceptions or conditions "eliminates the possibility of [there] being other exceptions under the legal maxim *expressio unius est exclusio alterius*").

I see no way to distinguish the mandate to provide PIP coverage from the mandate to provide minimum residual-liability coverage we highlighted in *Titan*. This leads me to the seemingly uncontroversial conclusion that mandatory PIP coverage arises by statute and that we must therefore look to the text of the statute to determine an insurer's

7

remedies to avoid its statutory obligations. Just as we said in *Titan*. When rescission is consonant with the statute it is permitted and when it is not, not.

## C. THIRD-PARTY CLAIMANTS' ENTITLEMENT TO PIP BENEFITS

The no-fault act provides ample guidance for an insurer who seeks to avoid its statutory obligations. The Legislature set up a comprehensive scheme in which insurers generally are expected to pay first and seek reimbursement later.

The Act makes plain who is eligible, and who pays. Anyone who suffers "accidental bodily injury arising from a motor vehicle accident" can claim benefits from their own policy or from another insurer in order of statutory priority. MCL 500.3114(4). If no insurer can be identified, the Michigan Assigned Claims Plan (MACP) is the insurer of last resort. MCL 500.3171. All insurers who write no-fault policies in Michigan receive a portion of MACP cases, allocated by market share. All eligible claimants injured in a motor vehicle accident are thus entitled to PIP benefits from *someone* unless one of the five exceptions in MCL 500.3113 applied at the time of the accident.[4] MCL

---

[4] MCL 500.3113 provides:

> A person is not entitled to be paid personal protection insurance benefits for accidental bodily injury if at the time of the accident any of the following circumstances existed:
>
> (a) The person was willingly operating or willingly using a motor vehicle or motorcycle that was taken unlawfully, and the person knew or should have known that the motor vehicle or motorcycle was taken unlawfully.
>
> (b) The person was the owner or registrant of a motor vehicle or motorcycle involved in the accident with respect to which the security required by section 3101 or 3103 was not in effect.

8

500.3113(c) excludes nonresident occupants in vehicles that are not registered in Michigan or insured under the Act; that exclusion is, of course, irrelevant to our determination of the rights and limitations on PIP coverage governed by the Act. Because none of the remaining exceptions in MCL 500.3113 can apply to *innocent* third parties, those innocent third parties are entitled to PIP benefits.

The Act makes the timing of payment similarly clear. An insurer must timely pay PIP benefits to claimants: PIP benefits become payable once loss accrues and "are overdue if not paid within 30 days after an insurer receives reasonable proof of the fact and of the amount of loss sustained." MCL 500.3142(2). The insurer must pay all benefits to or for the benefit of the injured person or, in death, to his or her dependents. MCL 500.3112. If the insurer is in any doubt about the party who should receive the payment, it may ask the circuit court for an order apportioning the benefits equitably between the proper parties. *Id.*[5] As we have said before, the no-fault act was enacted "to

---

(c) The person was not a resident of this state, was an occupant of a motor vehicle or motorcycle not registered in this state, and the motor vehicle or motorcycle was not insured by an insurer that has filed a certification in compliance with section 3163.

(d) The person was operating a motor vehicle or motorcycle as to which he or she was named as an excluded operator as allowed under section 3009(2).

(e) The person was the owner or operator of a motor vehicle for which coverage was excluded under a policy exclusion authorized under section 3017.

[5] MCL 500.3112 states, in relevant part:

Personal protection insurance benefits are payable to or for the benefit of an injured person or, in case of his death, to or for the benefit of

9

provide victims of motor vehicle accidents assured, adequate, and prompt reparation for certain economic losses." *Shavers v Attorney General*, 402 Mich 554, 579; 267 NW2d 72 (1978). Consistently with this goal, the Act requires insurers to make prompt payment to eligible claimants, with few exceptions.

When the Act's preference for prompt payments leads to mistakes, it provides remedies for insurers. If an insurer believes it was not obligated to pay a claimant's PIP benefits, the Act provides various avenues for shifting losses to the appropriate insurer after the fact. If, for example, two or more insurers are in the same order of priority, "an insurer paying benefits due is entitled to partial recoupment from the other insurers . . . in order to accomplish equitable distribution of the loss among all of the insurers." MCL 500.3114(6). Alternatively, a claim may be assigned to the MACP if

> no personal protection insurance is applicable to the injury, no personal protection insurance applicable to the injury can be identified, the personal protection insurance applicable to the injury cannot be ascertained because of a dispute between 2 or more automobile insurers concerning their obligation to provide coverage or the equitable distribution of the loss, or the only identifiable personal protection insurance applicable to the injury is, because of financial inability of 1 or more insurers to fulfill their

> his dependents. Payment by an insurer in good faith of personal protection insurance benefits, to or for the benefit of a person who it believes is entitled to the benefits, discharges the insurer's liability to the extent of the payments unless the insurer has been notified in writing of the claim of some other person. If there is doubt about the proper person to receive the benefits or the proper apportionment among the persons entitled thereto, the insurer, the claimant or any other interested person may apply to the circuit court for an appropriate order. The court may designate the payees and make an equitable apportionment, taking into account the relationship of the payees to the injured person and other factors as the court considers appropriate.

10

obligations, inadequate to provide benefits up to the maximum prescribed. [MCL 500.3172(1).]

The Act provides detailed procedures for resolving disputes between two or more insurers over their obligation to provide PIP benefits. MCL 500.3172(3) states:

> If the obligation to provide personal protection insurance benefits cannot be ascertained because of a dispute between 2 or more automobile insurers concerning their obligation to provide coverage or the equitable distribution of the loss, and if a method of voluntary payment of benefits cannot be agreed upon among or between the disputing insurers, all of the following apply:
>
> (a) The insurers who are parties to the dispute shall, or the claimant may, immediately notify the Michigan automobile insurance placement facility of their inability to determine their statutory obligations.
>
> (b) The claim shall be assigned by the Michigan automobile insurance placement facility to an insurer and the insurer shall immediately provide personal protection insurance benefits to the claimant or claimants entitled to benefits.
>
> (c) An action shall be immediately commenced on behalf of the Michigan automobile insurance placement facility by the insurer to whom the claim is assigned in circuit court to declare the rights and duties of any interested party.
>
> (d) The insurer to whom the claim is assigned shall join as parties defendant to the action commenced under subdivision (c) each insurer disputing either the obligation to provide personal protection insurance benefits or the equitable distribution of the loss among the insurers.
>
> (e) The circuit court shall declare the rights and duties of any interested party whether or not other relief is sought or could be granted.
>
> (f) After hearing the action, the circuit court shall determine the insurer or insurers, if any, obligated to provide the applicable personal protection insurance benefits and the equitable distribution, if any, among the insurers obligated, and shall order reimbursement to the Michigan automobile insurance placement facility from the insurer or insurers to the extent of the responsibility as determined by the court. The reimbursement ordered under this subdivision shall include all benefits and costs paid or incurred by the Michigan automobile insurance placement facility and all

11

benefits and costs paid or incurred by insurers determined not to be obligated to provide applicable personal protection insurance benefits, including reasonable, actually incurred attorney fees and interest at the rate prescribed in section 3175 as of December 31 of the year preceding the determination of the circuit court.

The Act's pay-first-and-haggle-later instructions to insurers further establish a clear intent to promptly cover PIP benefits for eligible claimants—like innocent third parties—one way or another.

In short, the no-fault act created a comprehensive statutory scheme that provides PIP coverage for all eligible claimants. The Act requires that PIP benefits be paid within 30 days of a claim. And because payment obligations may not be clear within 30 days, it provides mechanisms for a promptly paying insurer to recoup those payments from another insurer, dispute the obligation to pay benefits in the circuit court (after first assigning the claim to an MACP insurer for payment), or sue the owner of an uninsured vehicle for recovery of PIP benefits paid.

Permitting litigation of equitable defenses that conflict with the statute will upend the Legislature's clear expression of its priorities. The Act demands prompt, adequate, and assured payment of PIP benefits to eligible claimants, even though prompt and assured payments may be—at least temporarily—inequitable for an insurer. The Act's menu of remedies further underscores the Legislature's expressed preferences in favor of the eligible claimant: temporary inequity is answered by the statutory remedies of recoupment, reimbursement, and equitable distribution of losses. The judiciary is not at liberty to impose its preferences in contravention of these legislative choices. Cf. *Trentadue v Buckler Lawn Sprinkler Co*, 479 Mich 378, 392; 738 NW2d 664 (2007) ("Because the statutory scheme here is comprehensive, the Legislature has undertaken the

12

necessary task of balancing plaintiffs' and defendants' interests and has allowed for [equitable] tolling only where it sees fit.").

## D. THE FUTILITY OF EQUITABLE BALANCING WITH INNOCENT THIRD PARTIES

The Act created a system in which all insurers share the cost of eligible claims from innocent third parties in proportion to the insurer's market share. If Sentinel avoids any obligation to pay PIP benefits here, Citizens Insurance—the MACP insurer—will pick up the tab. The MACP will reimburse Citizens Insurance for the payments and the established loss adjustment cost, plus interest. MCL 500.3171. Claims and the losses from those claims are assigned to all insurers (including Sentinel, of course) proportionally.

Given this statutory scheme, I don't see what advantage rescission provides an insurer in any event. Rescission of third-party PIP benefits makes financial sense only if the insurer stands to prevent the claimant from receiving PIP benefits entirely, thus reducing the insurer's proportion of MACP costs. If the claimant is a third party and otherwise eligible for PIP benefits, such a result is impermissible under the statute. And so the innocent-third-party doctrine is consonant with (or a useful shorthand for) that statutory requirement.[6] PIP benefits are mandatory, governed by statute, and are

---

[6] Whether the statute can preclude rescission of the insured's own policy is a separate question, but it highlights why the innocent-third-party doctrine comports with the statutory scheme. The Legislature specifically excluded uninsured owners or operators from PIP eligibility entirely, going so far as to allow "[a]n insurer obligated to pay personal protection insurance benefits for accidental bodily injury to a person arising out of the ownership, maintenance, or use of an uninsured motor vehicle as a motor vehicle may recover such benefits paid and appropriate loss adjustment costs incurred from the

13

available from one source or another unless one of the five exceptions in MCL 500.3113 applies.

Rescission would benefit an insurer if it would eliminate a claimant's entitlement to PIP benefits entirely.[7] But under the statute, that should never be the case for an innocent third party; although a third party might be rendered ineligible for PIP benefits on the basis of his or her own wrongdoing, see MCL 500.3113(a) and (d) (that is, when the third party is *not* innocent), even rescission of an insurance policy for fraud would not affect an *innocent* third party's entitlement to PIP benefits—the no-fault act requires prompt payment of PIP benefits by the putative insurer (or the MACP if the coverage is in dispute) for eligible claimants, including all innocent third parties, and then provides remedies to divide the costs fairly among insurers after the fact. I don't see how the majority's opinion allowing litigation about rescission changes any outcome in an innocent-third-party claim; the statute already provides remedies for insurers, and innocent third parties must be covered one way or another.

The majority's reasoning for permitting this new layer of litigation, despite the comprehensiveness of the Act's approach to remedies for insurers like Sentinel, is that it

_____

owner or registrant of the uninsured motor vehicle or from his or her estate." MCL 500.3177(1).

[7] Rescission might be appropriate, for example, if it would serve the statutory imperative that an uninsured owner or operator cannot get PIP coverage under MCL 500.3113(b). To illustrate—if Hala Bazzi had been injured and claimed PIP benefits, rescission would render her ineligible for PIP benefits as the "owner or registrant of [the uninsured] motor vehicle . . . involved in the accident" because a fraudfeasor can't benefit from his or her fraud. *Id*. But for an innocent third party, rescission merely shifts the costs of benefits from one insurer to another.

14

believes that the Legislature's failure specifically to exclude the defense of rescission means that it must survive as an available defense. But this novel approach cannot be reconciled with traditional principles of statutory interpretation. "In general, where comprehensive legislation prescribes in detail a course of conduct to pursue and the parties and things affected, and designates specific limitations and exceptions, the Legislature will be found to have intended that the statute supersede and replace the common law dealing with the subject matter." *Millross v Plum Hollow Golf Club*, 429 Mich 178, 183; 413 NW2d 17 (1987), citing 2A Sands, Sutherland Statutory Construction (4th ed), § 50.05, pp 440-441; see also *Hoerstman Gen Contracting, Inc*, 474 Mich at 75 (concluding that when "the language of the statute shows that the Legislature covered the entire area, . . . [i]t clearly intended that the statute would abrogate the common law on this subject"). There are no rights under the no-fault act except those expressly conferred. See *Covenant Med Ctr, Inc v State Farm Mut Auto Ins Co*, 500 Mich 191, 217; 895 NW2d 490 (2017). Moreover, there is no saving clause in the no-fault act. Looking to comparable statutory schemes, even saving clauses are inadequate to preserve preexisting rights that conflict with a comprehensive statute.[8] The

---

[8] See, e.g., *AT&T Mobility LLC v Concepcion*, 563 US 333, 343; 131 S Ct 1740; 179 L Ed 2d 742 (2011) (Federal Arbitration Act) (a federal statute's saving clause "cannot in reason be construed as allowing a common law right, the continued existence of which would be absolutely inconsistent with the provisions of the act. In other words, the act cannot be held to destroy itself") (cleaned up); *Pilot Life Ins Co v Dedeaux*, 481 US 41, 54; 107 S Ct 1549; 95 L Ed 2d 39 (1987) (ERISA) ("The presumption that a remedy was deliberately omitted from a statute is strongest when Congress has enacted a comprehensive legislative scheme including an integrated system of procedures for enforcement."), quoting *Massachusetts Mut Life Ins Co v Russell*, 473 US 134, 147; 105 S Ct 3085; 87 L Ed 2d 96 (1985) (cleaned up); *United States v Locke*, 529 US 89, 106;

15

Act "prescribes in detail a course of conduct to pursue and the parties and things affected, and designates specific limitations and exceptions . . . ." *Millross*, 429 Mich at 183. Its provisions on PIP coverage show that "[i]t is intended to apply to nearly every situation involving" PIP benefits. *Hoerstman Gen Contracting, Inc*, 474 Mich at 74. As we have warned before, "[s]tatutes lose their meaning if 'an aggrieved party need only convince a willing judge to rewrite the statute under the name of equity.' " *Trentadue*, 479 Mich at 407, quoting *Devillers v Auto Club Ins Ass'n,* 473 Mich 562, 591; 702 NW2d 539 (2005). I am unconvinced, and therefore I am unwilling to rewrite this comprehensive statutory scheme by holding that the Legislature's failure to enumerate a list of all prohibited defenses means that an insurer can invoke rescission in a way that disrupts the legislative PIP mandate.

And the majority's decision to do so yields strange results indeed. If Hala Bazzi had no insurance policy, Ali Bazzi could have received prompt and assured PIP coverage through an MACP insurer. The same result would obtain if *two* insurers tried to rescind coverage. MCL 500.3172. Yet a single insurer can seek to rescind a policy and the entire process grinds to a halt. The injured innocent third party, who is unquestionably entitled to PIP coverage under the statute, is stuck in the middle of protracted litigation

---

120 S Ct 1135; 146 L Ed 2d 69 (2000) (Oil Pollution Act) ("We decline to give broad effect to saving clauses where doing so would upset the careful regulatory scheme established by federal law."); *Northwest Airlines, Inc v Transp Workers Union of America, AFL-CIO*, 451 US 77, 98; 101 S Ct 1571; 67 L Ed 2d 750 (1981) (Title VII) ("[A] favorable reaction to the equitable considerations supporting petitioner's contribution claim is not a sufficient reason for enlarging on the remedial provisions contained in these carefully considered statutes.").

16

over which insurer has to foot the bill. And *cui bono*? It's unclear what good-faith motive would drive an insurer to seek rescission of an otherwise eligible claimant's PIP coverage. As far as I can tell, the only way an insurer can do better than break even on an innocent third party's PIP coverage is if they manage to rescind the policy *and* prevent the third party from receiving PIP benefits from an MACP insurer—presumably by running out the clock on the notice period, a tactic that is plainly impermissible under the Act. I am not willing to impute that level of bad faith to anyone.[9] Yet there is one set of stakeholders who stand to benefit greatly from the court's decision today—lawyers. As attorneys enjoy the influx of billable hours from the extra round of litigation about the equities, their clients—insurers and accident victims alike—will see only mounting expenses.

Unlike in *Titan*, there is no policy justification for this result. In that case, *residual-liability* coverage was at issue. The purpose of residual-liability coverage is to indemnify the insured for a tort judgment. So although residual-liability benefits are payable to a third party to satisfy a civil judgment, the *beneficiary* of the indemnity is the insured fraudfeasor, who is personally liable for the judgment. PIP benefits for an

---

[9] And of course, an insurer who invokes equity as a dilatory tactic runs the risk that the chancellor catches on and cheerfully does "that which ought to be done." *Kent v Klein*, 352 Mich 652, 656; 91 NW2d 11 (1958) ("[C]hancery will not permit one to enrich himself at the expense of another by closing its eyes to what is clear to the rest of mankind. Equity, to paraphrase, regards that as seen which ought to be seen, and, having so seen, as done that which ought to be done."); see also *Windisch v Mtg Security Corp of America*, 254 Mich 492, 493-494; 236 NW 880 (1931) ("[O]ne who seeks equity must do equity.").

innocent third party, however, are not a windfall for the fraudfeasor because the beneficiary of the third party's medical care is, of course, the third party. And third-party PIP coverage is not only not a windfall, the fraudfeasor may be sued for an insurer's losses in covering the claim. MCL 500.3177(1).

## II. *TITAN* DID NOT ABROGATE THE INNOCENT-THIRD-PARTY DOCTRINE

### A. THE INNOCENT-THIRD-PARTY DOCTRINE IS DISTINCT FROM THE EASILY-ASCERTAINABLE-FRAUD RULE

I am not persuaded by the majority's view that our opinion in *Titan* abrogated the innocent-third-party doctrine either.

First, the doctrinal weakness: our opinion in *Titan* never mentioned the innocent-third-party doctrine. One explanation for this silence is that *Titan* did not address the innocent-third-party doctrine because the doctrine was not before us. The majority accepts an alternative explanation: perhaps *Titan* failed to mention the innocent-third-party doctrine because it is synonymous with the easily-ascertainable-fraud rule. This follows, the majority says, because the easily-ascertainable-fraud rule also applies to claims by third parties. The majority reasons that because *Titan* held that rescission was available "even when the fraud was easily ascertainable *and* the claimant is a third party," *Titan*, 491 Mich at 571 (emphasis added), third-party status alone cannot preclude rescission. But the majority makes a logical misstep—it assumes that third-party status is the only relevant factor on which to compare the two rules.

Precedent does not support this theory. Courts must specify what they mean when eliminating a common-law doctrine, generally by defining the contours of that doctrine in caselaw. *Titan* did just that. It overruled *State Farm Mut Auto Ins Co v Kurylowicz*, 67

18

Mich App 568; 242 NW2d 530 (1976), and its progeny and reaffirmed *Keys v Pace*, 358

Mich 74; 99 NW2d 547 (1959). *Kurylowicz* did not create an innocent-third-party rule—

it acknowledged the circumstances under which the innocent-third-party doctrine might

apply, but stressed that it need not consider those circumstances.[10] It is strange, then, to

say that *Kurylowicz* and its progeny are stand-ins for a doctrine that *Kurylowicz* itself

recognized as distinct. Moreover, even if the two doctrines converged over time, *Titan*

overruled three other cases that *did* acknowledge the innocent-third-party doctrine—

*Kurylowicz*'s "progeny"—but took care to overrule the decisions only to the extent that

they "held or stated that an insurer is estopped from denying coverage on the basis of

fraud when it could have easily ascertained the fraud . . . ." *Titan*, 491 Mich at 551 n 1,

citing *Ohio Farmers Ins Co v Mich Mut Ins Co*, 179 Mich App 355, 357-358, 362-363;

---

[10] The *Kurylowicz* panel stated:

> It is the policy of this state that persons who suffer loss due to the tragedy of automobile accidents in this state shall have a source and a means of recovery. Given this policy, it is questionable whether a policy of automobile liability insurance can ever be held void *ab initio* after injury covered by the policy occurs. Generally, it is held that:
>
> > "The liability of the insurer with respect to insurance required by the act becomes absolute whenever injury or damage covered by such policy occurs * * * no statement made by the insured or on his behalf and no violation of the policy provisions may be used to defeat or avoid the policy." 1 Long, The Law of Liability Insurance, § 3.25 pp 3-83-84. See *Detroit Automobile Inter-Insurance Exchange v Ayvazian*, 62 Mich App 94; 233 NW2d 200 (1975).
>
> That issue is not before us in this case, so we need not decide it. [*Kurylowicz*, 67 Mich App at 574.]

19

445 NW2d 228 (1989), *Farmers Ins Exch v Anderson*, 206 Mich App 214, 219; 520 NW2d 686 (1994), and *Manier v MIC Gen Ins Corp*, 281 Mich App 485, 489-490; 760 NW2d 293 (2008).

The majority is correct that both doctrines appear to apply to the same people (third parties), but similarity on that single dimension is not dispositive. The innocent third party is a particular subset of third parties, of course. She must be *innocent*. And therefore the doctrine is consonant with the statute: a third party who drives a stolen vehicle (§3113(a)) or drives a vehicle despite being named as an excluded operator (§3113(d)) is ineligible for PIP benefits. The easily-ascertainable-fraud rule did not explicitly make that distinction.

Instead, I am persuaded by the distinction Judge BECKERING drew—the two doctrines announced different thresholds for rescission depending on the *origin* of the coverage in question. An insurer's ability to rescind optional coverage was far more expansive—rescission of coverage above the statutory floor was only precluded if the insurer itself was blameworthy. In other words, the right to seek rescission of optional coverage was the insurer's right to lose. If the insurer failed to exercise even the minimum of reasonable care before binding itself to an insurance contract, why should equity rescue it from its obligation to a third party? As between these two actors, the insurer was the cheapest cost avoider. But if the insurer acted reasonably yet still fell victim to fraud, it would be unfair to require it to pay out the benefits that arose from the parties' infirm contract. So went the easily-ascertainable-fraud rule.

But what if the parties' rights and obligations arise and are governed by statute? If coverage is mandated by statute, then the statute defines the circumstances in which

20

rescission is available. These mandatory policy provisions are in no sense bargained-for.[11] Instead, they are the default starting point of every insurance policy. And the Act makes plain the Legislature's intention that innocent third parties' medical expenses be covered in the event of an accident, whether by the insurer linked with the vehicle involved in the accident or through the MACP.

This principle comports with the no-fault act, but it also makes sense from an equitable standpoint that different rules developed depending on the source of coverage—the parties bargain for additional coverage, and it is tacked on to a standard set of state-mandated provisions that cannot be negotiated. *Titan* recognized this distinction implicitly. The statutory and contractual provisions of the insurance policy were effectively treated as severable—rather than speaking in terms of *reforming* the contract, we eliminated the easily-ascertainable-fraud rule and held that, because the disputed coverage was not governed by the Act, the insurer was entitled to avail itself of all traditional legal and equitable remedies to avoid the optional coverage. But as I explained, the validity of the innocent-third-party doctrine was not before us in *Titan*, because there was simply no dispute over the statutory benefits it protects.

---

[11] The premium the insurer might charge for those provisions may have been bargained for, but the insurer could likely remedy that defect by seeking money damages at law or reformation in equity. *See Benton Harbor Sch Dist v State Tenure Comm*, 372 Mich 270, 273-274; 126 NW2d 102 (1964) (stating that equitable relief is unavailable if there is a remedy at law that is reasonably speedy and adequate); *Amster v Stratton*, 259 Mich 683, 688; 244 NW 201 (1932) (concluding that reducing the contract price was more equitable than permitting rescission).

The result of the majority's opinion only fuels my skepticism: It recognizes that there are no per se rules in equity and therefore remands for the trial court to balance the equities. Although Sentinel prevailed here, its right to raise equitable defenses may prove to be a hollow victory.[12] The innocent-third-party doctrine allowed courts to cut short fruitless litigation. In addition to ensuring the speedy payment of benefits as the statute requires, the doctrine operated as equitable shorthand. In other words, it described the equitable balance of certain archetypal relationships, thus saving the parties (and courts) the time and expense of balancing the equities case-by-case. That certainty, efficiency, and stability is now lost.

The majority instead remands for equitable balancing, but it is mum on what that proceeding will entail. Its silence allows it to avoid confronting the burdensome realities of its remedy. The majority states that "[e]quitable remedies are adaptive to the circumstances of each case, and an absolute approach would unduly hamper and constrain the proper functioning of such remedies." *Ante* at 17. It further points out that " '[e]quity jurisprudence molds its decrees to do justice amid all the vicissitudes and intricacies of life' and that '[e]quity allows complete justice to be done in a case by adapting its judgments to the special circumstances of the case.' " *Ante* at 17, quoting

---

[12] Beyond ballooning legal expenses, the possibility of rescission also injects uncertainty that will warp an insurer's risk calculus. As we have recognized before, "[T]he uncertainty associated with subjecting insurers and insureds to the whims of individual judges and their various conceptions of 'equity' would *increase* overall insurance costs because insurers would no longer be able to estimate accurately actuarial risk." *Devillers v Auto Club Ins Ass'n*, 473 Mich 562, 589 n 62; 702 NW2d 539 (2005).

22

*Tkachik v Mandeville*, 487 Mich 38, 45-46; 790 NW2d 260 (2010) (alterations in original). "Complete justice" sounds good to me. But the remand order with instructions that the trial court *please ensure that complete justice is done, thank you,* doesn't paper over the problems with the remedy.

A remedy that is adaptive to the circumstances of each case requires that a court consider each case's unique circumstances. All of them. Parties will be required to litigate a new set of factual and legal disputes. Since no one factor is dispositive and any factor may be relevant, each party is incentivized to pursue every argument of conceivable merit, to fight each battle to its end, to concede nothing. And summary disposition is not a tool in a court's toolkit in disputes over equity, where any fact can be material and no rule is absolute. Thus, parties will litigate trials within a trial to demonstrate to the court that their opponent is the more blameworthy party. They will dispute whether the insurer exercised reasonable diligence to discover the insured's misrepresentations in her application before issuing a policy, whether the third party knew that the policy was obtained by the insured's fraud, and even whether the third party was driving negligently at the time of the accident; they will also litigate all possible legal avenues of relief, all possible alternative sources of recovery, and the third party's likelihood of success on the merits in each. And I don't expect smart lawyers to stop there in pursuing their clients' goals.

It's hard to call this a win for insurers or accident victims.

23

## B. THE INNOCENT-THIRD-PARTY DOCTRINE IS SUBSTANTIVELY SOUND

We rejected the easily-ascertainable-fraud rule in *Titan* because it was unsupported by law. The rule was unsupported by the no-fault act because the Act does not govern optional contractual coverage. And it was unsupported by substantive common-law doctrines against fraud or misrepresentation because the rule created an affirmative duty that conflicted with the legal elements of fraud. "[A]lthough the doctrines of actionable fraud, innocent misrepresentation, and silent fraud each contain separate elements, none of these doctrines requires that the party asserting fraud prove that the fraud could not have been discovered through the exercise of reasonable diligence." *Titan*, 491 Mich at 557. Although the rationale of the easily-ascertainable-fraud rule—the "clean hands" doctrine—may remain a valid consideration as a matter of equity, the insurer's lack of reasonable diligence does not affect a fraud claim as a matter of law.

The innocent-third-party doctrine, in contrast, comports with both equitable principles and the Act. It simply does not suffer from the same doctrinal weaknesses as the easily-ascertainable-fraud rule. And in the new equitable-balancing world in which a third party's innocence certainly will be weighed, and innocent third parties will be covered by one insurer or another, the shorthand serves the purposes of the Act and saves insurers from costly litigation. I see no principled basis to reject it.

## III. CONCLUSION

The no-fault act is a comprehensive statutory scheme in which the Legislature established a clear intent to mandate PIP coverage for all eligible claimants. I would hold that because the Act mandates payment of PIP benefits and explicitly provides cost-

shifting and recovery remedies for insurers to invoke after the fact, the Legislature intended to abrogate common-law and equitable remedies when those remedies are in conflict with the Act. Rescission of an insurance policy to avoid the obligation to provide PIP benefits for an innocent third party contravenes the Legislature's enacted policy. Sentinel may seek to avoid its PIP obligations by invoking the remedies permitted by statute, but it may not invoke equity as an independent basis to avoid the payment of mandatory PIP benefits to an eligible claimant.

The majority's decision to permit rescission litigation when that remedy is inconsistent with the Act is a victory only for lawyers. Innocent third parties must be covered one way or another because the statute requires it and the equitable balancing cannot impose a remedy contrary to law. Although innocent third parties surely will have to endure new delays with the new litigation (and new uncertainty over the availability of MACP coverage at all if litigation commences after the one-year notice period for the MACP).

Insurers lose too. Sentinel's "win" in today's innocent-third-party rescission litigation will be another insurer's loss when the MACP assigns it to pick up the tab. Lawyers, on the other hand, have lots of new litigation to pursue.

                                    Bridget M. McCormack
                                    David F. Viviano

25